HENRY H. GAGE

*v.*

GEORGE W. PARKER.

*Filed at Ottawa March 28, 1882—Rehearing denied September Term, 1882.*

1. CHANCERY—*amendment of bill—multifariousness.* After the filing of an original bill to set aside a sale of lots for unpaid special assessments, on the ground that the ordinance under which the assessment was made was illegal and void, a supplemental bill was filed showing a subsequent sale of

103   528
204   ⁷473
103   528
214   ¹284
103   528
115a  ⁵589

the same property to the same purchaser, and a redemption from such sales within the time provided by law, but that the purchaser had taken out deeds on the sales, which it prayed to have set aside: *Held,* that the supplemental bill was a mere amendment, and as an amendment was proper, and that the bill as amended was not multifarious, the matters in the two bills not being distinct and unconnected.

2. SAME—*retaining bill to grant complete relief—effect of amending bill.* Where a court of chancery once obtains jurisdiction of a cause on any equitable ground, a subsequent amendment of the bill asking other relief will not deprive the court of jurisdiction to grant complete relief. When the court acquires jurisdiction for one purpose, it may go on and do complete equity between the parties.

3. SAME—*ground of jurisdiction—distinguished from bill to remove a cloud upon title.* To give a court of equity jurisdiction of a bill solely to quiet title, or remove a cloud from the title, the complainant must allege and prove possession of the premises, or that they are unimproved and unoccupied.

4. But where a bill was originally filed by the owner of land for the purpose of enjoining the execution and delivery of a deed therefor upon an alleged void special assessment, it is not to be regarded as a bill to quiet title or remove a cloud, and does not fall within the rule stated as governing that class of bills. Nor will the character of the jurisdiction in that regard be considered as modified by the filing of a supplemental bill, setting up that the complainant had redeemed from the sale under the alleged void assessment, and that after such redemption the purchaser had taken out a deed, and praying that such deed be set aside and canceled.

5. EVIDENCE—*questioning judicial proceedings collaterally—confirmation of special assessment.* A party by suffering judgment of confirmation of a special assessment upon his property by a court of record, is estopped in a collateral proceeding from showing the illegality of such assessment by reason of the insufficiency of the ordinance on which it is based.

6. SAME—*proof of ownership of land—sufficiency.* While a complainant must prove every material allegation of his bill which is denied, yet when his ownership of lots, in respect of which relief is sought, is not a mooted question, his testimony that he purchased the property originally with his own money from C D, in connection with the deed made to him by C D, may be regarded as sufficient proof of ownership.

7. SAME—*to prove redemption from tax sale.* The book of tax sales and redemptions which the county clerk is required to keep, and in which to enter all sales for taxes, the quantity sold, name of purchaser, etc., and the name of the person redeeming, the date and amount of the redemption money, is competent evidence of the facts therein entered, and of a redemption appearing therein.

8. Redemption—*from sale of land for taxes.* Where several judgments are rendered at the same time against land for State and county taxes and special assessments, and the land is sold under such judgments in July, August and September of the same year, the sale being continued through these months, this will be regarded as only one sale, and a party attempting to redeem from such sale must pay the penalty provided by the statute. Section 211 of the Revenue law has no application to such a case, but to a case where the same land is again sold for the taxes of a succeeding year.

Appeal from the Superior Court of Cook county; the Hon. George Gardner, Judge, presiding.

Mr. Augustus N. Gage, and Mr. Henry D. Beam, for the appellant:

New and distinct causes of action accruing after the filing of the original bill can not properly be introduced by amendment or supplemental bill. A party, under the privilege of amending, can not introduce new matters which will constitute a new bill. 1 Daniell's Chancery Practice, 405, and note 5; *Verplanck* v. *Mercantile Ins. Co.* 2 Edw. Ch. 212; *Shields* v. *Barrow,* 17 How. 130.

A plaintiff can not file a supplemental bill to introduce facts which have occurred since the filing of the original bill, upon which a decree can be had without reference to the original bill. *Milner* v. *Milner,* 2 Edw. Ch. 114; *Pinch* v. *Anthony,* 10 Allen, 477; *Chandler* v. *Petit,* 1 Paige, 168; *Land* v. *Cowan,* 18 Ala. 297; *Vaughan* v. *Vaughan,* 30 id. 329; *Fahs* v. *Roberts,* 54 Ill. 192; 2 Daniell's Chancery Practice, 1515.

A bill is multifarious when it seeks to litigate several claims which are in their nature separate and distinct from, and have no relation or dependence upon, each other. Story's Equity Pleading, secs. 271, 530–534; *Ryan* v. *Trustees of Shawneetown,* 14 Ill. 20.

When the plaintiff's title is put in issue by the pleadings, he must prove it. *Wing* v. *Sherer,* 77 Ill. 200.

The bill fails to allege that complainant was in possession of the lots, or that the same were unimproved and unoccupied, and hence fails to show equitable jurisdiction. *Hamilton* v. *Quimby*, 46 Ill. 90; *Hardin* v. *Jones*, 86 id. 313; Rev. Stat. 1874, p. 204, sec. 50.

The complainant is estopped by the judgment confirming the special assessment from disputing its validity or questioning its correctness. *People* v. *Brislin*, 80 Ill. 423; *Lehmer* v. *People*, id. 601; *Prout* v. *People*, 83 id. 154; *Chicago and Northwestern Ry. Co.* v. *People*, id. 467; *Andrews* v. *People*, id. 529.

The evidence in the record shows that no redemption was made, the sum deposited not being sufficient. Rev. Stat. 1874, chap. 120, sec. 210. The law contemplates but one annual sale, though the judgment may be for several distinct taxes and special assessments, and the several sales in law constitute but one sale for that year.

Mr. J. W. WAUGHOP, for the appellee:

A supplemental bill is proper when new matter has arisen since the filing of the original bill. *Burke* v. *Smith et al.* 15 Ill. 159.

It being in effect but an amendment, forms a part of, and is tried with, the original case. *Mix* v. *Beach et al.* 46 Ill. 314.

When there is a common interest, a common ground for relief, and a common ground for invalidity, the bill is not multifarious. *Gage* v. *Chapman*, 56 Ill. 311; *Finch* v. *Martin*, 19 id. 105. ∘

The complainant did prove title to the property by his own oath and without objection. On bill to remove a cloud from the title to land, an equitable title is all that is required to support the allegation of ownership. *Hempstreet* v. *Burdick*, 90 Ill. 444.

The prime object of the bill in this case was not to remove a cloud, but to set aside the tax deeds as void, and issued without authority of law. This general jurisdiction of courts of chancery is asserted in *Gage* v. *Rohrbach*, 56 Ill. 262; *Reed* v. *Tyler et al.* id. 288; *Gage* v. *Chapman*, id. 311; *Emery* v. *Cochran*, 82 id. 65; *Farwell* v. *Harding*, 96 id. 32.

'When equity acquires jurisdiction for one purpose, it will retain it for all purposes necessary to do complete justice between all parties. *Conklin* v. *Foster*, 57 Ill. 105; *Sherlock* v. *Village of Winnetka*, 59 id. 389.

The ordinance is void for indefiniteness as to the nature and character of the proposed improvement. Ordinances less objectionable have been held void for indefiniteness in describing the work to be done. *Foss* v. *City of Chicago*, 56 Ill. 354; *Jenks* v. *City of Chicago*, id. 397; *Andrews* v. *City of Chicago*, 57 id. 239; *Wright* v. *City of Chicago*, 60 id. 312; *Page* v. *City of Chicago*, id. 441; *Bryan* v. *City of Chicago*, 60 id. 507.

The county clerk's certificate of redemption was competent evidence of that fact. *Henrichsen* v. *Hodgen*, 67 Ill. 179. The redemption was properly made by paying the penalty only on the last sale.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the Court:

The property in question, consisting of the north half of lots 13 and 14, Bailey's subdivision of a certain twenty-acre tract in Hyde Park, Cook county, Illinois, was sold on the 9th day of October, 1874, in payment of a special assessment made by the village of Hyde Park, known as No. 7, for the purpose of constructing a brick sewer on Fifty-first street. At the sale Henry W. Gage became the purchaser, for the sum of $136.40. On the 5th day of October, 1876, George W. Parker, who claimed to be the owner of the property, filed this bill to set aside the sale, mainly on the ground that the ordinance under which the assessment was made was illegal

and void. In 1881 the complainant in the original bill filed a supplemental bill, in which, after restating the original case, he alleged, in substance, that at the annual tax sale of 1877 said half lots were again sold for certain delinquent taxes and special assessments, and that Gage became the purchaser. It was then set up that complainant had, within the time provided by law, redeemed the premises from said sales, but after the redemption was made Gage had taken out deeds on the sales. These deeds the bill prays may be set aside and canceled.

It is first urged that it was error to allow the supplemental bill to be filed, and the bill, as amended by the supplemental bill, was multifarious. The supplemental bill was a mere amendment of the original bill, which brought before the court a subsequent sale of the same land purchased by the same party. As the parties were the same, and the same land involved, and the subject matter of the litigation the same, we think the amendment was proper. Nor do we regard the bill as being multifarious. Story (sec. 271) says: "By multifariousness in a bill is meant the improperly joining in one bill distinct and independent matters, and thereby confounding them, as, for example, the uniting in one bill of several matters perfectly distinct and unconnected, against one defendant, or the demand of several matters of a distinct and independent nature, against several defendants in the same bill." The matters in the original bill and supplemental bill were not distinct and unconnected. The whole controversy in the case is in regard to the same land, and in reference to taxes, and we perceive no good reason why the whole matter may not properly be united in one bill.

It is next urged that complainant failed to prove title to the premises. It is alleged in the bill that complainant owned the premises, and denied in the answer. Of course complainant was bound to prove every material allegation in the bill which was denied. This was not, however, a

mooted question in the case, and appellee's evidence, that he "purchased the property originally with his own money from E. Bailey," in connection with the deed made to him, may be regarded as sufficient.

It is next urged that the decree is erroneous, because complainant neither alleged nor proved possession of the premises, or that the same were unimproved or unoccupied, or that the defendant was not in possession thereof. If this was a bill solely to quiet title or remove a cloud from the title, then, under sec. 50, Rev. Stat. 1874, page 204, and the ruling in *Hardin* v. *Jones*, 86 Ill. 313, the point would be well taken. Such, however, is not the case. The object of the bill, as originally filed, was not to quiet title or remove a cloud, but to enjoin the execution and delivery of a deed upon an alleged void special assessment. The court, as a court of equity, acquired jurisdiction to grant the relief under this head, and the fact that an amendment was subsequently made to the bill, under which other relief was asked, did not deprive the court of jurisdiction to proceed and grant complete relief. It is a familiar rule in equity, that where the court acquires jurisdiction for one purpose, it may go on and do complete equity between the parties. This case does not form an exception to the rule.

The ordinance under which the assessment was made, provided: "Whereas, heretofore, on the 1st day of July, 1871, an ordinance was adopted by the town of Hyde Park, providing for the construction of a brick sewer on Fifty-first street, from Lake Michigan to State street, as set forth in the following ordinance, the cost of which was estimated at $75,000, the actual cost of which will exceed the estimated cost; now, therefore, be it ordained, that the following improvement be completed: That a sewer be constructed on Fifty-first street, from Lake Michigan to State street, said sewer to be of sewer-brick; inside diameter five feet from Lake Michigan to Hyde Park avenue; four feet nine inches

from Hyde Park avenue to Madison avenue; four feet six inches from Madison avenue to Woodland avenue; four feet three inches from Woodland avenue to Drexel avenue; four feet from Drexel avenue to Cottage Grove avenue; three feet nine inches from Cottage Grove avenue to the center of the park; three feet six inches from the center of the park to Kankakee avenue; three feet three inches from Kankakee avenue to Indiana avenue; three feet from Indiana avenue to Michigan avenue; two feet nine inches from Michigan avenue to Wabash avenue; and two feet six inches from Wabash avenue to State street,—suitable man-holes and catch-basins to be built, and that a permanent and suitable protection at the lake outlet be constructed, and connected with said sewer; that the cost of said improvement be defrayed by a special assessment, to be made in accordance with law; that commissioners be appointed to estimate the cost of said improvement."

The 19th section of article 9 of the act in relation to cities, villages and towns, under which the town of Hyde Park passed the ordinance, declares: "Whenever such local improvements are to be made wholly or in part by special assessment, the council, in cities, or board of trustees, in villages, shall pass an ordinance to that effect, specifying therein the nature, character, locality and description of such improvement." It is contended that this ordinance did not comply with the requirements of the section of the statute *supra*, and hence the assessment was illegal, under the ruling of this court in *Lass* v. *Chicago*, 56 Ill. 354, and other like cases. We shall not, however, stop to pass upon the validity of the ordinance, as complainant is not in a position to question its validity. It appears that the assessment was made under the ordinance, and a return made to the county court of Cook county, where, on the 24th day of November, 1873, after due notice, it was confirmed, except as to the land of certain persons who appeared and filed objections, complain-

ant not being one of them. Is complainant concluded by the judgment of confirmation?

In *People* v. *Brislin*, 80 Ill. 423, where it was contended that the assessment was illegal, because not on contiguous property, it was said: "This question, and all others bringing up the levy and assessment, have been passed upon by the circuit court, and are *res judicata*, and can not now be made in this court. Upon these there is a judgment passed by a court of competent jurisdiction, and there they must rest." This case has been followed by a number of other decisions, where the same doctrine has been announced. *Lehmer* v. *The People*, 80 Ill. 601; *Prout* v. *The People*, 83 id. 154; *Chicago and Northwestern Ry. Co.* v. *The People*, id. 467; *Andrews* v. *The People*, id. 529.

If the assessment was illegal from the fact that it was based upon an insufficient ordinance, it was the duty of the complainant in the bill to appear before the county court when the application was made to confirm the assessment, and there make the objection; but as he failed to do so, this judgment of the county court, when called in question collaterally, must be regarded as conclusive.

We now come to that branch of the case made by the supplemental bill. In 1877 the half lots became delinquent for State and county taxes, and for certain special assessments which had before that time been levied against the property. The county collector, as required by the statute, made application to the county court for judgment against the half lots, and for an order of sale in satisfaction of the taxes and special assessments then due and unpaid. Judgments were obtained, and a precept issued. The sale of lands was commenced on the 23d day of July, 1877, and was continued until the latter part of October. The lands in question were sold on a part of the judgments, July 28, 1877, and on another portion, August 14, and on the remaining judgments, September 3, 1877. It appears, from the

evidence, that the sale was regularly adjourned from day to day, from the time it was commenced until the close, in October, and that the lots in question were sold as they were reached in the regular order in which the sale was conducted. It is alleged in the bill that the lands were redeemed from these tax sales, and in support of this allegation certain certificates of redemption, executed by the county clerk, were read in evidence. These certificates, defendant contends, are not authorized by the statute, and are not competent evidence to prove any fact. Whether the certificates of redemption are technically competent evidence, we shall not stop here to determine. The statute requires the county clerk to keep a book, in which it is made his duty to make a record of lands sold at tax sale, the quantity sold, name of purchaser, etc., and when the property is redeemed the clerk shall enter the name of the person redeeming, the date and amount of redemption, in the proper column. (Rev. Stat. 1874, chap. 120, sec. 197.) The book in which the sale and redemption were entered in this case was read in evidence, and if the certificates of redemption were not competent evidence, the book was, and the same facts were established by the book as were sought to be proven by the certificates of redemption.

This brings us to the question whether a sufficient amount of money was paid to the county clerk to redeem the lands from the sales. The money was paid to the proper officer, and within the time required, and he received it as a redemption, and issued certificates of redemption, which were delivered to the complainant. But it is urged by the appellant that a sufficient amount was not paid to redeem the lands from the sales. Section 210 of the Revenue law provides, that property may be redeemed from a tax sale "at any time within two years from the time the sale is made, by the owner paying to the county clerk the amount for which the land was sold, and twenty-five per cent, if redeemed before the

expiration of six months; if between six and twelve months, fifty per cent; if between twelve and eighteen months, seventy-five per cent; if between eighteen months and two years, one hundred per cent. The person redeeming shall also pay the amount of all taxes and special assessments accruing after such sale, with ten per cent interest thereon from the day of payment, unless such taxes or assessments have been paid by or on behalf of the person for whose benefit the redemption is made." The complainant did not comply with this section of the statute, and can not claim a redemption under it, as neither the penalties named in the section nor the subsequent taxes were included in the amount deposited as a redemption.

The complainant, however, claims that the redemption is valid under section 211 of the Revenue law, which declares: "If any purchaser of real estate sold for taxes or special assessment shall suffer the same to be again sold for taxes or special assessment before the expiration of the last day of the second annual sale thereafter, such person shall not be entitled to a deed for such real property until the expiration of a like term from the date of the second sale, during which time the land shall be subject to redemption, upon the terms and conditions prescribed in this act; but the person redeeming shall only be required to pay, for the use of such first purchaser, the amount paid by him. The second purchaser shall be entitled to the redemption money, as provided for in the preceding section." It is contended by the complainant in the bill, that as the property in question was sold in July, August and September, of the year 1877, this section applied, and all he had to do was to pay the penalty on the last sale— the simple amount of the other bids and subsequent taxes. It is clear that the section of the statute cited *supra*, would require a person who purchased at the annual tax sale of 1877, to protect the same property from the annual tax sales of 1878 and 1879, or if he failed to do so, and allowed the

property sold in 1878 or 1879, the owner could redeem from such sale by payment of the amount of the first bid. But we do not understand that the statute has any application to a case like the one here under consideration. The judgments for the State and county taxes and the special assessments in this case were all rendered at the same term, and although the land was sold in July, August and September, it was but one sale, and must be regarded in the same light as if the property which was being sold during the most of three months had all been sold in one day.

It is not contended that any mistake of fact existed in regard to the amount of redemption money paid, and that relief may be granted on that ground, as was done in *Gage* v. *Scales*, 100 Ill. 218. But in the bill the relief is based purely on the ground that a proper redemption was made. We do not think that the evidence establishes a redemption, and the decree setting aside these deeds was erroneous.

The decree will be reversed and the cause remanded.

*Decree reversed.*

Mr. JUSTICE DICKEY, dissenting:

I do not concur in the conclusion in this case. While I think the officer making sale of this property ought *regularly* to have sold the same upon all of the judgments rendered at the same term, for taxes or assessments, against this land, still the record shows that this was not done. There were *in fact* three different sales, made in different months, the time for redemption from which began to run at three different dates. It happens that the purchaser at each sale is the same man. That, however, can not affect the nature of the sale. I do not think we have any lawful warrant to treat these three sales as one. The purchaser's deeds depend upon the validity of these sales. His deeds must stand or fall with these sales. To sustain his deeds they must be taken to be three separate valid sales. The relief sought is

to set aside these deeds because issued after redemption. If the sales be treated as separate valid sales, then it became the purchaser's duty, in order to entitle himself to the penalties on his first purchase, to protect the property from subsequent sale,—by paying up the other charges on which judgment had been rendered, and upon which no sale had been made. The failure of the purchaser to do this, deprived him, under the statute, of his right to the penalties under the first sale. The same is true of the second sale. (Sec. 211, chap. 120.) If this view be correct, the redemption money was sufficient. When the purchaser, at the sale made in July, suffered the property to be again sold in August, then, by this statute, the time for redemption began to run from the date of the August sale, and when he again permitted this property to be sold in September, and became the purchaser, the time for redemption began to run from the date of the September sale, and the amount required to redeem on the last days of redemption consisted, under this section, of the full redemption money on the amount of the September sale, and in addition the amount actually paid by the purchaser at each of the former sales. This amount was paid. I am not inclined to deprive an owner of his land who has literally complied with the statute as to redemption. This section applies, by its terms, to "any purchaser" at a tax sale who "shall suffer the same to be *again* sold" for taxes "before the end of the second annual sale thereafter." Here the purchaser did "suffer the same to be again sold" before that time.