(84 N. W. Rep. 347.)

---

EMMONS COUNTY *vs.* LANDS OF FIRST NATIONAL BANK OF BISMARCK, *et al.*

Opinion filed October 27, 1900.

**Delinquent Tax List—Affidavit of Clerk.**

Construing chapter 67, Laws 1897: Pursuant to section 1 of said act the county treasurer of Emmons county filed a delinquent tax list with the clerk of the District Court, and attached his affidavit thereto, a copy of which is set out in the opinion. *Held*, upon grounds appearing in the opinion, that said affidavit substantially conformed to the requirements of the statute and is sufficient.

**Immediately—Construed.**

Said affidavit and list were filed with the clerk on August 19, 1897. *Held*, construing the words "immediately" and "forthwith," found in section 1 of said statute, that said words are directory merely, and that the said list was filed in due time and while the act was in force.

**Publication of Delinquent Tax List.**

The county commissioners of Emmons county, at a special session of the board held June 5, 1897, adopted a resolution whereby they designated a newspaper in which said delinquent tax list should be published. The call for said special session was issued and published

by the county auditor of said county and was, after excluding its formal parts, as follows: "Notice is hereby given that the board of county commissioners is called to convene on June 5, 1897, for the purpose of fixing the amount of bond, and approving the same, required to be given by the publisher of the delinquent tax list, under the provisions of chapter 2, Laws of 1897, and also for the transaction of any other business that may come before the board." *Held*, for reasons given at length in the opinion, that said call, when construed in the light of the provisions of said chapter 67, was sufficient to advise the commissioners and the public of the fact that the commissioners would at said special session do whatsoever the law required them to do in the matter of the publication of said delinquent tax list, including the letting of the contract to publish the list, fixing the amount of and approving the publisher's bond, and designate a newspaper in which the board would require the publication to be made. All of such acts are closely linked together, and the performance of all is naturally and usually, if not necessarily, done at the same time, and such acts are so associated that notice of the doing of one will reasonably suggest the doing of all.

### Call for Special Session Must State Object.

The auditor's call of the special session was made pursuant to section 1898, Rev. Codes 1895. Construing said section, *held*, that the object of the special session must be stated in the call with reasonable certainty, and the business done at such session must be confined to the objects stated in the call. *Held*, further, that the following words, "for the transaction of any other business which may come before the board," embraced in said call, or any similar language, cannot operate to enlarge the scope of the call, or authorize the commissioners to enter upon business not named in the published call of the auditor.

### Designation of Newspaper.

The statute contemplates that the number of special sessions of the county board shall be relatively small, and that the public shall be advised by a published call as to what particular public interest it is which demands the assembling of the commissioners in special session. *Held*, under the facts stated in the opinion, and construing section 1 of the act, that a certified copy of the resolution designating a newspaper for the publication of the tax list was filed in due season with the clerk of the District Court.

### Excessive Judgments—Jurisdiction.

On motion papers presented to the District Court, it appeared by affidavit that certain tax judgments against defendants' lands were entered for taxes on said delinquent list, which had never been lawfully levied, and, further, that said judgments were entered for amounts of interest and penalty largely in excess of any amount lawfully chargeable against the land. *Held*, that neither of these facts in any wise affected the jurisdiction of the court to enter such judgment, nor did either of said facts operate to render the judgments wholly void.

### Tax Judgments Sustained.

The order of the District Court vacating said judgments, and setting aside the tax sales made thereunder, was erroneously made, and the same is reversed, and the District Court is directed to enter an order revoking the same, and an order denying defendants' application to set aside said tax judgment.

Appeal from District Court, Emmons County; *Winchester*, J.
Action by the County of Emmons against the lands of the First

National Bank of Bismarck and others, to enforce payment of taxes on real estate delinquent in and prior to the year 1895 in such county. Judgment for defendants, and plaintiff appeals.

Reversed.

*George M. Register* and *Cochrane & Corliss*, for appellant.

This appeal is from an order vacating, as null and void, a final judgment in tax proceedings under the tax law of 1897, and allowing the defendant, the owner of the land against which the judgment was rendered, to serve an answer in the case. The statute, in terms, declares that the proceedings under it constitute an action, and such is the holding of all the courts construing this and similar statutes. *McHenry* v. *Kidder County,* 8 N. D. 413, 79 N. W. Rep. 875; *Pine County* v. *Lambert,* 58 N. W. Rep. 990; *State* v. *Lands,* 42 N. W. Rep. 476; *In re Stutsman County,* 88 Fed. Rep. 337; *Wells County* v. *McHenry,* 7 N. D. 246, 74 N. W. Rep. 241. The filing of the list is the filing of the complaint and also constitutes a notice of the pendency of such action. When the list is filed the clerk prepares a notice which, with the list, is published for three weeks, and this notice constitutes the process, and the publication thereof the service of such process, and, upon default, judgment is entered as in other cases, but against the land and not against any person. Chap. 67, Laws 1897. The defendant has moved to vacate a final judgment in a civil action. The burden is upon him to set forth the specific grounds on which such judgment shall be vacated. As against his attack, the law presumes the judgment to be valid and regular and the court must consider only the defects, irregularities and grounds for vacating the same, which are embraced in the motion and supported by competent proof. 15 Enc. Pl. & Pr. 286; *Farrington* v. *New England Investment Co.,* 1 N. D. 108-109, 45 N. W. Rep. 191; *Busching* v. *Sunman,* 49 N. E. Rep. 1091. The claim that the judgment is void because entered by the clerk, is untenable. The entry of judgment is purely a ministerial act. The clerk is not called upon to pass upon any controverted issues of fact or question of law, because the default of those interested in the land confesses the legality of the tax appearing upon the published list; besides the clerk has before him a prima facie case. The statute declares that the list filed with the clerk shall be prima facie evidence that all the provisions of law in relation to the assessment and levy of the tax have been complied with. § 9, chapter 67, Laws 1897; § 1585, Statutes of Minnesota, 1894; *Bond* v. *Pacheco,* 30 Cal. 530. The jurisdiction of the court does not depend upon there being a valid tax, but upon the fact that a complaint has been filed against the land claiming a certain tax to be legal, and the land itself brought within the jurisdiction of the court by the publication of the notice and list, which, under the statute, constitutes lawful service against the property. The courts construing similar statutes have uniformly held, that the jurisdiction of the court was not affected by the fact that the land

was exempt from taxation, or that the tax had been paid. *Chisago County* v. *Railway Company,* 6 N. W. Rep. 854; *Chauncey* v. *Wass,* 30 N. W. Rep. 826. This holding necessarily assumes that the jurisdiction of the court does not depend upon the existence of a tax, for in each of these cases there was no tax; in the one case because there was no power to tax the land at all, and in the other case because the tax had been paid. The general plan and scheme of this tax law, as a whole, is that delinquency is the very issue tendered in these proceedings ,and upon which the judgment is conclusive. Everything, whether payment of the tax, exemption of the property from taxation, illegality of the tax, or anything that would show the land was not delinquent in fact, is intended to be mere matter of defects. *Chisago County* v. *Railway Co.,* 6 N. W. Rep. 454; *Wallace* v. *Brown,* 22 Ark. 118; *Worthen* v. *Ratcliffe,* 42 Ark. 330; *Knoll* v. *Woelken,* 13 Mo. App. 275; *State* v. *Sargent,* 12 Mo. App. 228; *Mayo* v. *Foley,* 40 Cal. 281; *Cadmus* v. *Jackson,* 52 Pa. St. 295; *Gaylord* v. *Scarff,* 6 Ia. 179; *Gage* v. *Parker,* 103 Ill. 528. One of the so-called jurisdictional defects in the assessment is, that the assessor did not assess the land from actual view or upon any reliable information, but that the land was arbitrarily valued and assessed at a sum in excess of the value placed upon other lands. This in no manner affects the jurisdiction. The taxpayer must, for an unequal assessment, seek redress before the administrative body established by law for the purpose of hearing his grievances. *State* v. *Lakeside Land Co.,* 73 N. W. Rep. 970; *State* v. *West Duluth Land Co.,* 78 N. W. Rep. 115. The other grounds of defects in the assessment and levy are, that in certain years the land was not properly described, and that levies were made by percentage and not in specific amounts and were made without being based upon an itemized statement. These defects do not take away the jurisdiction of the court to adjudicate that the taxes were legal. *Wells County* v. *McHenry,* 7 N. D. 246; *In re Stutsman County,* 88 Fed. Rep. 337. There was no affidavit of merits presented upon the motion ,and this is fatal to the order appealed from. *Sargent* v. *Kindred,* 3 N. D. 1; *Kirschner* v. *Kirschner,* 7 N. D. 291; Freeman, Judgments, 108; 6 Enc. Pl. & Pr. 187-188. No proposed verified answer was served with the moving papers. This is essential. 6 Enc. Pl. & Pr. 181-184; *St. Paul, Etc. Ry. Co.* v. *Blackman,* 44 Minn. 514. Defendant has been guilty of gross and inexcusable laches. The law proceeds on the theory that, this being a proceeding in rem, personal notice is not given, or required to be given to those who are interested in the res. *Dausman* v. *St. Paul,* 23 Minn. 394; 6 Enc. Pl. & Pr. 164-190. Section 9, chap. 67, Laws 1897, is taken from § 1588, Statutes of Minnesota 1894. The Supreme Court of Minnesota have held that a taxpayer cannot show, on the proceedings to obtain a tax judgment, that his land was not fairly assessed. *State* v. *Lakeside Land Co.,* 73 N. W. Rep. 970; *State* v. *West Duluth Land Co.,* 78 N. W. Rep. 115; *McCurddy* v.

*Prugh,* 55 N. E. Rep. 154. The court acquired jurisdiction over the land by the publication of the statutory notice. Such mode of acquiring jurisdiction in such cases has been repeatedly sustained. *Chauncey* v. *Wass,* 30 N. W. Rep. 628; *Francis* v. *Grote,* 14 Mo. App. 324; *Gage* v. *Parker,* 103 Ill. 528; *Wallace* v. *Brown,* 22 Ark. 118; *Dausman* v. *St. Paul,* 22 Minn. 394; *Chisago County* v. *St. Paul Ry. Co.,* 6 N. W. Rep. 454; *Commissioners* v. *Morrison,* 25 Minn. 295; *State* v. *Sargent,* 12 Mo. App. 228; *Watson* v. *Ulbrich,* 18 Neb. 186-189. This is a proceeding in rem and not a proceeding against a person. The court takes jurisdiction of and proceeds against specified property exclusively; the final judgment is rendered against such property and not against any person. The statute forbids the setting aside of the sale by indirection, as by setting aside the judgment, and in proceedings to vacate the judgment after the sale has been made, except on the ground of want of jurisdiction would be futile. § 15, chap. 67, Laws 1897; *Chauncey* v. *Wass,* 30 N. W. Rep. 828. The legislature may prescribe the time within which a party may obtain relief against a judgment. *Sargent* v. *Kindred,* 5 N. D. 472; 6 Enc. Pl. & Pr. 197; *Chauncey* v. Wass, 30 N. W. Rep. 831. It is the fact of the service of process or the publication of notice that gives jurisdiction, and not the proof thereof. It is elementary that the proof of service may be filed at any time or the fact of service established by any competent evidence. *Cowan* v. *Farrell,* 7 N. D. 397; *Lawrence* v. *Howell,* 2 N. W. Rep. 617; *Hugh* v. *Clark,* 66 N. W. Rep. 262; *Bernett* v. *Blatz,* 46 N. W. Rep. 319; *Frisk* v. *Reigelman,* 43 N. W. Rep. 1117; *Commissioners* v. *Morrison,* 22 Minn. 179; *Southern Pacific Fruit Exchange* v. *Starum,* 54 Pac. Rep. 345. Courts have frequently reversed orders vacating judgments, even in cases involving discretion, on the ground of the abuse thereof, and such orders will always be reversed when illegally granted. *Bailey* v. *Laffee,* 29 Cal. 422; *Dausman* v. *St. Paul,* 23 Minn. 394; *Gauthier* v. *Rusicka,* 3 N. D. 1; *Kirschner* v. *Kirschner,* 7 N. D. 291; *Sargent* v. *Kindred,* 5 N .D. 472. Even when the motion is made within the time fixed by statute it will be denied if the party has been guilty of laches. 6 Enc. Pl. & Pr. 192; *Gerrish* v. *Johnson,* 5 Minn. 10; *Groh* v. *Bassett,* 7 Minn. 254; *Altman* v. *Gabriel,* 28 Minn. 134. The order is appealable. It is an order made after final judgment affecting a substantial right. *Petition of St. Paul & Duluth Ry Co.,* 6 N. W. Rep. 454.

*F. H. Register, Stevens & Allen,* and *H. A. Armstrong,* for respondents.

WALLIN, J. In this action (improperly entitled a "proceeding") the District Court for Emmons county, by an order dated February 28, 1900, vacated, as void, and set aside, certain tax judgments entered by said court against certain lands and described in said tax judgments. The judgments so vacated were entered pursuant to chapter 67 of the act of 1897, authorizing actions to be com-

menced to recover taxes becoming delinquent in 1895 and prior years, together with the interest, penalties, and costs therein. Emmons county has appealed to this court from such order, and the record embraces the order itself, and all of the papers upon which the order is based, which include the proceedings in the actions in which said tax judgments were entered, and the notice of motion and the affidavit upon which the hearing was had in the District Court, which culminated in the order upon which this appeal is taken. The grounds of the motion to vacate said tax judgments, as stated in the notice of said motion, are quite voluminous, but the same are summarized in the brief of counsel for the respondents as follows (we quote literally from respondents' brief) :

"Point 1. The county treasurer of Emmons county did not immediately after the passage and approval of chapter 67 of the Laws of 1897, as required by section 1 of the act, make and file in the office of the clerk of the District Court of his county a list of taxes upon real estate, as provided by section 1, and no such list was filed until six months after the passage and approval of the act. He did not annex to the list an affidavit as required by statute." The treasurer of the county filed a tax list with the clerk of the District Court on August 19, 1897. After excluding formal parts, the affidavit annexed to the list is as follows: "I, H. W. Allen, treasurer of Emmons county, do solemnly swear that the within and foregoing is a correct list of real estate taxes for the years therein stated, of said county, becoming delinquent in and prior to the year 1895, and that the same have not been paid into the county treasurer.". Section 1 of the act (chapter 67, Laws 1897) requires the county treasurer to attach to the list filed with the clerk of the District Court his affidavit, embracing, among other averments, a statement "to the effect that the same is a correct list of the taxes upon real estate in his county." As has been shown, the affidavit used the phrase "of said county" instead of "in said county." This phrase is criticised by counsel, and counsel argues that the words "of said county" point to taxes levied for county purposes, and for none other, whereas the law required that all delinquent taxes on real estate in the county, whether state or local, should be placed on the list. The words used in the statute are "in the county" and the affidavit would therefore have been more technically accurate if these words had been inserted in it, but we think the language actually employed, when fairly construed with its context and in the light of the statute, is of the same import as the statutory words, and hence we cannot sustain this contention. Nor would the entire omission of such affidavit at all affect the jurisdiction of the court. *Commissioners* v. *Morrison,* 22 Minn. 178.

Respondents' second proposition under point 1 of his brief, is to the effect that all proceedings in the action, including the tax judgments, are absolutely void, because, as counsel contends, the action was instituted too late. Counsel calls attention to the provi-

sions of section 1 of the act requiring county treasurers to file such tax list with the clerk "immediately after the passage and approval of the act," and requiring the clerk of the District Court to "forthwith make a copy thereof and attach thereto a certain notice," and the treasurer to publish such notice "forthwith." The statute in question became a law on February 20, 1897, and this action was instituted by filing the tax list with the clerk on August 19th, following the filing,—a period of one day less than six months after the law took effect. The statute itself does not undertake to name any period after which it will cease to be in force, nor has counsel ventured to indicate in his brief any date when it will finally cease to operate as a law of the state. The contention of counsel is that the language of the act which has been quoted all looks to celerity of action on the part of county officials, and his claim is that the record shows that the county officials of Emmons county were dilatory, and did not manifest sufficient promptness in instituting these actions. We certainly do not feel called upon by the facts of this case to decide, in the absence of any testimony explanatory of such delay as occurred, that, as a matter of law, the action to collect these taxes was commenced too late, and after the act in question had ceased to be a law of the state. It is true, the law took effect on February 20th; but it is a matter of common knowledge that the sessions laws of this state are seldom published officially prior to the month of August next following their enactment. Keeping this consideration in view, it would seem that the officials of Emmons county had acted with reasonable promptness, especially as it hereafter appears that official action was taken under the law as early as June 5, 1897. But the language of the statute we have quoted, and which is relied upon by counsel to sustain his contention, is purely directory in character, and must be so construed under established rules of construction. We find the governing rule laid down in 23 Am. & Eng. Enc. L. 458, as follows: "Statutory prescriptions in regard to the time, form, and mode of proceeding by public functionaries are generally directory, as they are not of the essence of the thing to be done, but are given simply to secure system, uniformity, and dispatch in the conduct of the public business." See Suth. St. Const. § § 447, 448. In section 448 the auther states the rule as follows: "Provisions relating to duties of public officers, and specifying the time for their performance, are in that regard generally directory." See *State v. Lean,* 9 Wis. 279; *Kipp* v. *Dawson,* 31 Minn. 373, 380, 17 N. W. Rep. 961, 18 N. W. Rep. 96. This rule of construction was applied by this court in *Johnson* v. *Day,* 2 N. D. 295, 50 N. W. 701. In the light of these authorities, we have no hesitation in holding that this action was instituted during the life of the statute.

The second point in the brief of respondents' counsel is as follows: "Point 2. The newspaper in which the tax list was published was never designated by a resolution of the board of county commissioners of Emmons county." With respect to this proposition

the record discloses that the commissioners of Emmons county assembled on June 5, 1897, and then and there adopted and spread upon their record the following resolution: "Resolved, that Emmons County Record is hereby designated as the newspaper in which the delinquent tax list is to be published, in conformity with the provisions of chapter 67, Laws of 1897, and the said publishing is hereby let to the publisher of the Emmons County Record at the rate of 15 cents for each description; and it is further resolved that the Emmons County Record furnish a bond to the county of Emmons in the sum of $5,000, conditioned for the correct and faithful performance of the said publishing of said tax list." It is conceded that this resolution represents the only action ever taken by the county board with respect to any of the matters mentioned in the resolution, and further conceded that said resolution was not adopted at either a regular or adjourned session of the board. It appears that the resolution was in fact adopted at a time when the commissioners were assembled pursuant to a call or notice from the county auditor of said county, which is as follows: "Notice is hereby given that the board of county commissioners is called to convene on June 5th, 1897, for the purpose of fixing the amount of bond, and approving the same ,required to be given by the publisher of the delinquent tax list under the provisions of chapter 2, Laws of 1897, and also for the transaction of any other business that may come before the board." This notice was issued and signed under the authority conferred upon county auditors by section 1898 of the Revised Codes of 1895; and there is no suggestion in the record that the notice was not regularly served upon all members of the board, nor that any member was absent when the resolution was adopted. The claim of counsel, as stated in his brief, is that "the call did not show that the purpose of the meeting was to designate a newspaper for the publication of the delinquent tax list," and upon this assumption counsel deduces the conclusion that the board was without authority to designate a newspaper at said special session. The statute requires that the auditor's call of a special session shall embrace a notice of the "time and object of the meeting." Section 1898, supra. A perusal of the notice shows that both of these requirements were embraced in the call in question. The objects of the session were stated in the call as follows: "For the purpose of fixing the amount of bond ,and approving the same, required to be given by the publisher of the delinquent tax list under the provisions of chapter 2, Laws of 1897, and also for the transaction of any other business that may come before the board." The object of the meeting as thus set forth in the call was certainly a lawful object, and hence no discussion is needed to show that the board, when it met on the day designated, was lawfully assembled in special session. But counsel lays particular emphasis upon the point that the call did not in terms declare "that the purpose of the meeting was to designate a newspaper for the publication of the delinquent tax list." This criticism of the call is entirely correct,

and we are convinced that, unless the matter of designating a newspaper is fairly germane to the objects of the meeting as set out in the call, the board at such special session was without authority to designate a newspaper. The call, in our opinion, is not, as plaintiff's counsel argues, alone intended to apprise members of the board of the time and objects of the session. Its further purpose is to advertise the meeting by posting or publishing notices of the same, and such requirement manifestly is primarily and chiefly for the purpose of giving notice to the public, and especially to the citizens and taxpayers of the county, of the time and object of the special session, to the end that all interested persons may attend the meeting, and know in advance what business will be transacted at such meeting. Nor do we think the general statement in the call to the effect that the meeting was called for the "transaction of any other business that may come before the board" will aid this notice, or would justify the transaction of business wholly foreign to the object of the special session as stated in the call. It is noticeable that the discretion to call a special session is not vested in the board, but is vested in the county auditor, and that the latter is not authorized to call such a session at his pleasure, but only when the "interests of the county demand it;" nor can a lawful call be made, in our judgment, by the use of mere general terms, such as those employed in the latter part of the call in question, and which wholly fail to apprise the public of the particular object of the meeting. In discussing a similar call it was said in *Hayden* v. *Noyes,* 5 Conn. 391: "It is the purpose of the law not to prescribe a frivolous form, but to prescribe substantial information." See *Bloomfield* v. *Bank,* 121 U. S. 138, 7 Sup. Ct. Rep. 865, 30 L. Ed. 923; *Little* v. *Merrill,* 10 Pick. 543; *Insurance Co.* v. *Westcott,* 14 Gray, 440. In Dill. Mun. Corp. (3d Ed.) 268, the rule is stated as follows: "When the statute requires the notice to specify the business to be done, an omission to comply with that requirement makes the meeting void. A notice 'to do any other business' is insufficient ,and acts and votes of the meeting held under it are of no binding force. Indeed, the rule is that, when the statute requires the business to be stated in the warning or notice, this is absolutely essential, and the meeting must be confined to these matters." The author cites an array of cases in support of this statement of the rule. We deem the rule as above stated to be entirely in harmony with the legislative purpose, and one that rests upon a solid basis of reason as well as judicial authority. In our judgment, to hold that a county board at a called session may lawfully transact any proper county business not referred to in the call would necessarily defeat the obvious purpose of the law, viz: that of apprising the public at large of the particular character of the business to be done at a called session. The evil of any such lax rule of construction is well exemplified in a case decided by the Supreme Court of the territory. See *Territory* v. *Steele,* 4 Dak. 78, 23 N. W. Rep. 91. In that case a special session of the county commissioners was

called "for the purpose of acting on applications for liquor licenses and other important business." Under this call the board met, and issued a notice of a special election, to be held under a special law, to vote upon the question of issuing county bonds to the amount of $20,000. The court in the case cited animadverted with severity upon the action taken by the board upon a matter entirely outside of and foreign to the object of the session as stated in the call. Authorities cited by counsel showing what action may be taken by county boards at an adjourned session are not pertinent to the question under consideration, for the reason that the legislature has not attempted to safeguard the citizen by any special provisions of law limiting the action which may be taken at adjourned sessions.

Applying the strict rule as above laid down to the facts of this case, we are to determine whether the call issued by the county auditor of Emmons county ,when fairly construed, was sufficient to apprise the public of the fact that a newspaper would be designated at such session, in which the delinquent list in question would be published. We have seen that the call did not state such object in terms, and hence the same cannot be regarded as a model call for such purpose. It must be further conceded that the reference in the call to chapter 2 of the Laws of 1897 does not tend to make the call definite as to the object of the session. Said reference to chapter 2 is, however, an obvious clerical error, as that chapter does not mention either a delinquent tax list or a bond, but is confined wholly to criminal legislation. But we do not think a direct reference to the chapter of the law under which action was to be had was essential to a valid notice, and hence, for the purposes of this case, we shall eliminate, as surplusage, the clause in the call which refers to chapter 2 of the Laws of 1897. After throwing out this reference, the purpose of the meeting was stated in the call as follows: "For the purpose of fixing the amount of bond, and approving the same, required to be given by the publisher of the delinquent tax list." It must be remembered, in this connection, that the public is chargeable with knowledge of the provisions of the laws of the state, and hence this notice must be construed with reference to this legal presumption. Chapter 67 of the Laws of 1897 made provision for the publication of a delinquent tax list of taxes on real estate which became delinquent in 1895 and prior years, and the same chapter required the commissioners to let the contract for the publication of the list, and also to fix the amount of the publisher's bond, and approve the same. The public, being advised of these statutory provisions in advance of the publication of the auditor's call, will be presumed to have read the call in the light of the provisions to which the call, by its terms, directed especial attention in unmistakable language. But the statute to which public attention is thus directed contains a further provision relating to the publication of such delinquent list, which is found in section 4 of the act, and is as follows: "The newspaper in which such publication shall be made shall be designated by a resolution of the

board of county commissioners of the county in which the taxes are laid." It appears, therefore, that chapter 67 of the laws of 1897 required the county commissioners (1) to let the contract for the publication of the delinquent tax list, and (2) to take and approve a bond from the contractor, and finally to designate the newspaper in which the delinquent list should be published. Construing these provisions together, and keeping in view the fact that the public is presumed to be advised of the same, we are of the opinion that the call for the special session of the board, when fairly construed in the light of the statute, was sufficiently definite in its terms to apprise the public that the board at such session would proceed, under said statute, not only to fix the amount of the publisher's bond and approve the same, but to let the contract to some party who would bind himself to publish the list in a proper manner, and in some newspaper to be then designated by the commissioners, if none had been theretofore designated by them; and in this case the designation had not been made prior to the date of the called session. We think the several duties of the commissioners required to be done by the act of 1897 in the matter of the publication of the delinquent list are very closely linked together, and are in their nature so associated that to mention one of such duties would suffice to sugggest all of the same. We are therefore of the opinion that the public, having been informed by the terms of the call that the commissioners at such session would proceed to fix the amount of and approve the bond "required to be given by the publisher of the delinquent tax list," were further sufficiently advised by the call that the board would then and there do the other acts and things required of them in and about such publication, including the duty of designating a newspaper in which the party giving the bond would be required to publish the list. We think the act of designating the newspaper is so directly connected with the specific acts named in the notice that the public was bound to know that such designation must precede the specific acts. No bond could be approved until it was given, and no bond could be given until the contract for the publication was closed; and, as a practical business matter, such contract ordinarily would not be closed until the newspaper in which the publication should be made had been agreed upon and designated.

Respondents' counsel states his third point as follows: "The county auditor did not file in the office of the clerk of the District Court of Emmons county a certified copy of any resolution of the board of county commissioners designating a newspaper for the publication of the delinquent tax list." Section 4 of chapter 67 required that a copy of the resolution designating the newspaper in which the list should be published shall be filed in the office of the clerk of the District Court, and that such copy should be certified to by the auditor. Pursuant to this requirement the county auditor addressed to the clerk of the District Court a written communica-

tion as follows: "To D. R. Streeter, Clerk of the District Court—
Dear Sir: In conformity with section 4, chapter 67, Laws of 1897,
you are hereby notified that the following resolution was adopted
by the board of county commissioners at their meeting on June 5th,
1897." Here followed a copy of the resolution of the board, already
set out at length, and to this was appended the following: "Witness
my hand and seal this 23rd day of July, 1897. Edward Braddock,
County Auditor Emmons Co., N. D." And to this was affixed the
auditor's official seal. We think this is a substantial compliance with
the statute. By it the auditor notified the clerk and the public,
under his hand and seal, that the resolution in question was adopted
by the board. The law does not prescribe any form of certificate,
and hence the auditor was at liberty to employ any terms which
would fairly meet the statutory mandate. That he has substantially
done so by this certificate we think is self-evident, and we therefore
cannot sustain this contention of counsel.

Counsel states his fourth point as follows: "Point 4. The judg-
ment entered against each tract of land was largely excessive and
unauthorized, and that appears on the face of the judgment." The
facts found in the record upon which this proposition of counsel is
based may be condensed and stated as follows: From an affidavit
made by counsel for the respondent, which is embraced in the mo-
tion papers, and upon which the District Court acted in making
its order vacating the tax judgments in question, it appears that
the several judgments in question are excessive in amount, and that
such excess is caused by the addition of certain sums by way of
interest and penalties, which are largely in excess of any sums
legally chargeable against the lands. For example, it so appears
that, as to the tax of 1889, only 90½ per cent. was legally chargeable
as interest and penalties, and that such per cent., and no more,
could lawfully be added to the amount of the original tax, whereas
the affidavit shows that 143 per cent. was in fact added to the ori-
ginal tax and was embraced in the judgment; and the affidavit
further shows that the other judgments were also largely excessive,
by the addition thereto of excessive and illegal penalties and interest.
Said affidavit further states facts tending to show that many of
the taxes for which said judgments were entered were not legal
taxes, and had not been lawfully levied. We deem it unnecessary
to enter into the particular defects in the tax levies which are
claimed by counsel and set forth in the motion papers. It will
suffice to say, in general terms, that in our judgment it appears that
not many of the taxes were vulnerable to a proper attack. Some of
them, at least, appear not to have been lawfully levied. Of course,
a valid assessment and levy are essential to a valid tax, and we are
satisfied that many of the judgments in question could not have
been legally entered if the facts showing the existing defects in
the tax proceedings had been brought to the attention of the trial
court while the action was pending in the District Court, and
before the judgments were entered thereon. But it not appearing

that this was done, nor that there was an appearance in the action, we must assume, in support of these judgments, that they were entered by default, and therefore are based upon the evidence which the statute (section 9) declares to be prima facie evidence that "all the provisions of the law in force at the time of such assessment and levy in relation to the assessment and levy of the taxes" had been complied with. The list itself is made prima facie evidence of these important facts, and the list alone, being on file, would authorize the entry of these judgments, in the absence of any rebutting evidence. The delinquent list, on its face, shows the amount of the original tax for each year, the amount of interest and penalty thereon, and the total amount; and, as has been seen, the list itself is prima facie evidence that the taxes, etc., appearing thereon are valid. The postulate of counsel on this branch of the case is, and must be, that in entering these tax judgments the District Court was without jurisdiction to do so. This assumption rests upon two other assumptions, viz: First, that the court had no legal authority to enter judgment for any tax appearing on the tax list, if the same was an invalid tax on account of any fundamental defect in the tax proceedings leading up to such tax; and, secondly, that, in cases where the court had jurisdiction over a tax on the list, it would immediately lose and forfeit such jurisdiction if it attempted to enter judgment in a sum in excess of the legal amount due. This court cannot yield its assent to either or any of these assumptions, for the reason that we consider them each and all fallacious, and to uphold them, or either of them, would, in our opinion, defeat every valuable feature of the law of 1897. The purpose and scope of that statute are to give the taxpayer his day in court, and to afford him an opportunity to demand a judicial determination of any and all questions touching the legality of taxes against his land which appear upon the delinquent list required to be filed with the clerk of the District Court. For this purpose an action is commenced against the land, and the taxpayer has legal notice of its pendency. He is provided with a simple procedure. He is permitted to appear and answer, and is given an opportunity to introduce any competent evidence bearing upon the legality of any tax appearing on the list in which he is in anywise interested. The court in which the action is heard is clothed with authority to determine that any tax on the list is invalid, either in whole or in part, and, if found invalid, to annul the same; and the court is therefore necessarily competent to declare that any tax on the list is a valid tax, and to enter a judgment for the amount thereof. Having authority to adjudicate, it will follow that it may possibly erroneously adjudicate in some cases; and, in contemplation of such a contingency, the law points out methods of correcting errors which may be made in such cases. It is well settled that the jurisdiction of the court in this class of cases in no wise depends upon the validity of the tax proceedings involved, nor does it depend upon the taxability of the land against

which the judgment is rendered. See *In re St. Paul & D. R. Co.* (Minn.) 6 N. W. Rep. 454; *Chauncey* v. *Wass* (Minn.) 30 N. W. Rep. 826; *Wallace* v. *Brown,* 22 Ark. 118; *State* v. *Sargent,* 12 Mo. App. 228; *Gage* v. *Parker,* 103 Ill. 528. Counsel cites in support of his contention Blackw. Tax Titles, § § 354, 355. These citations embody a statement of a certain rule of law relating to the jurisdiction of courts, which is well settled, and which is to the effect that, where a court of general jurisdiction "acts under special and summary powers derived wholly from statutes," it is incumbent that such jurisdiction should be made to appear affirmatively. To this rule we yield our assent, but we are unable to see its pertinency to any feature of the case which arises under the fourth point of the respondents' brief, which is here under discussion. We are unable to understand how the court, clothed as it is with plenary power to hear and determine whether a tax appearing on the list is valid or invalid, and to enter a judgment accordingly one way or the other, is devested of its power in all cases whenever and as soon as it is made to appear that a given tax on the list is invalid. Nor do we see how a judgment entered for an amount in excess of a tax legally due can operate to render a judgment void on its face. It may be true that a judgment for taxes which is excessive in amount may, as in other cases, be corrected by motion in a case where such illegality has not been waived, or the right to attack the judgment lost by laches, or otherwise lost; but, however this may be, there can be no doubt that entering such a judgment for too much would not itself operate to oust the court of its jurisdiction, and thereby render the judgment void.

We find nothing in this record showing that the District Court for Emmons county was without jurisdiction to enter the tax judgments in question, and it must follow that the order of the District Court vacating such judgments and setting aside the tax sales made thereunder, on the ground that the same is void, was erroneously made; and we therefore direct the District Court to enter an order reversing the order appealed from, and to enter an order denying the application herein to vacate said tax judgments. Appellant to recover its costs and disbursements in both courts. All the judges concurring.

### ON PETITION FOR REHEARING.

In denying the petition for a rehearing in this case, we briefly notice the points vigorously urged by counsel, and upon which he bases his petition. We fully appreciate the fact that the authorities are in conflict as to whether or not in these special tax proceedings a judgment is conclusive as to the validity of the tax upon which it is based. We took our statute from the state of Minnesota, almost verbatim, and after it had been there settled by a long line of decisions that judgments under the statute were conclusive as to such matters. Under a familiar canon of construction, we took the statute with the construction there placed upon it.

'We adhere to our view that the notice of the special meeting of the county commissioners was sufficient, and that the designation of a newspaper in which the delinquent tax list should be published was germane to the matter specified in said notice. True, there is another delinquent tax list known to our law, and frequently mentioned in our statutes. But there is no other delinquent tax list wherein the publisher is required to give bond for its faithful publication, and when the notice recites that it was "for the purpose of fixing the amount of the bond, and approving the same, required to be given by the publisher of the delinquent tax list," it could refer only to the delinquent list under this special statute. It was not necessary that this notice should fix the hour of meeting. Section 1898, Rev. Codes 1895, fixes the dates for the regular meetings of the board. No hour is mentioned. If the time for special meeting is equally definite, it is sufficient. Nor was it necessary that publication of this notice should appear in the court proceedings. It had no place there. The statute designates what must appear therein, and nothing more need affirmatively appear.

Equally clear are we that an error in the amount of the judgment does not render the judgment void. Jurisdiction to enter judgment in these special proceedings being once established, jurisdiction to err in computation follows just as surely as in cases where original jurisdiction is presumed. But under this statute (chapter 67, Laws 1897) the clerk has nothing to do with computing the amount of penalty and interest. Section 1 requires the treasurer to make that computation, and his list must show the amount as to every tract. Section 3 makes a true copy of this list a part of the published notice that constitutes service in the case, and such notice calls upon every person interested in any land included in the list to set forth any objection or defense he may have to said tax or any portion thereof, or the penalties or interest thereon. If no appearance be made, section 6 requires the clerk to enter judgment for said amount, adding the statutory costs. The list stands as the complaint. The amount specified in the list is the amount claimed in the complaint. The list, under the statute, proves itself. The clerk made no errors of computation.

Fnally, and to reiterate from the opinion, the motion to vacate in this case went upon the ground that the judgment was void. There was no appeal to the favor. There was no opportunity to exercise or abuse discretion. The whole attack was upon the ground that the judgment was void for want of jurisdiction. The order appealed from was based upon that ground. If we should concede —which we do not—that some of the grounds of motion might be available upon an appeal to the favor, yet no such appeal was made. The petition is denied.