TERRITORY *ex rel.* HIGGINS V. STEELE *et al.*

1. ELECTION NOTICE—INSUFFICIENT.
    Kidder county having been divided into three election precincts, a notice of election posted in one precinct only which informs the electors that a special election for the entire county will be held at a polling place in such precinct, is fatally defective.

2. ISSUING BONDS—RESOLUTION OF COUNTY COMMISSIONERS—INSUFFICIENT.
    The resolution of the board submitting the question of issuing court house bonds, under the special act of February 23, 1883, did not specify the amount of bonds to be voted upon, *held*, insufficient.

Filed March 21, 1885.

Appeal from the district court of Stutsman county.

*W. E. Dodge*, for defendant and appellant.

Plaintiff contends that the board should have had five days notice, excluding both the day of its date and the day upon which the meeting was held. This is not the rule. Sedg. Const. Stats. 356; Jacobs v. Murray, 15 Cal. 22; Com. v. Maxwell, 27 Pa. St. 444; Gross v. Fowler, 12 Cal. 392; Mason v. School Dist. 20 Vt. 487, 14 Vt. 300, 15 Vt. 147; Barton v. Abbee 16 Ohio, 409; Lang v. Phillips, 27 Ala. 311; Kimm v. Osgood, 19 Mo. 60; Weeks v. Bull, 19 Conn. 376; 1 Houst. (Del.) 188.

An election will not be held void because of informalities in the record of the county board on which the election is ordered. Scott v. Paulen, 15 Kan. 162.

Nor does the absence of such notice invalidate the election. Dishon v. Smith, 10 Iowa, 212. The clerk had authority to issue notice of election under the act, without any resolution by the board.

Those provisions of the law which effect the mere preliminaries and details of an election, or the recording and return of votes, are directory, and though the officers of the election may be liable to punishment for a violation thereof, yet the people are not allowed to suffer on account of the default of their agent.  McCrary on Elec., § 127–8, and authorities therein cited; Taylor v. Taylor, 10 Minn. 107; People v. Bates, 11 Mich. 362; Gorham v. Campbell, 2 Cal. 135; 31 Cal. 173; 34 Cal. 635; People v. Brenham, 3 Cal. 377.

The only provisions of an election law which are mandatory, are those which relate to the time and place of holding election and the qualifications of electors.

Sec. 3, Chap. 27, Pol, Code, provides "that * * * the county commissioners shall appoint three judges of election for each precinct and when necessary set off and establish election precincts or districts." These are discretionary with the board.  They may set off as many or as few as they please, or none at all.  They are for the temporary use and convenience of holding the annual election, and cease to exist when the election is ended,  The board has no power to appoint new precinct officers, until the next general election.  A provision of the general statute relating to the manner of holding general elections, and setting off election precincts therefor cannot be applied to and does not effect special elections directed to be held by act of the legislature.  McCrary on Elections, § 186; Clark v. Buchanan et al., 2 Minn. 346; Gill. 298.

Hobart v. The Supervisors, 17 Cal. 2437.  In this case the court says:  "There is no force in the point that the polls were not opened in every precinct.  The act did not require that this should be done, but the election seems to be governed by the same rules which prevail in elections for public officers."

An election will never be enjoined or set aside on account of any irregularity or insufficiency of notice, unless it is affirmatively shown that a sufficient number of electors have been or will necessarily be prejudiced thereby to change the result, or that the preliminary proceedings are so manifestly fraudulent as to render it void.  McCrary on Elections, §§ 116, 117, 123–4,

127–8; 10 Iowa, 212; People v. Cook, 8 N. Y. 67; Dickey v. Hulburt, 5 Cal. 343; State v. Jones, 19 Ind. 356.

There is no averment in the complaint that there was any lack of notice, or that any elector in said county was ignorant of the time, place and object of the election. The points raised by the plaintiff are simply technical. So far as the complaint shows it is presumable that every elector of said county was present and voted on the question there submitted. It would have been time for the plaintiff to complain when he or some other elector of said county had been deprived of his right as a voter by the fraudulent acts of the county officials, and when tue minority, by means of such fraud, had carried the election by a vote to bond the county and erect the buildings. "Equity will not interfere with public officers at the suit of a private person until they have actually done something in violation of plaintiff's legal rights, or threatened him with irreparable injury." Judd and another v. Town of Fox Lake et al., 28 Wis. 583; 26 Am. Dec. 633–4; Harpending v. Gov. of Cal., 39 Cal. 189; Wood et al. v. Bangs et al., 1 Dak. 179.

*Alex. Hughes, Att'y Gen., Wilson & Ball* and *Alfred Wallin,* for respondents.

Recourse may be had to a court of equity to restrain any actions by municipal corporations, or their officers, which is illegal and beyond their power, and which, if permitted to be done, would seriously effect the interests of citizens, voters and taxpayers. 2nd Dillon's Municipal Corporations, 3d Ed. Sec. 922; 2nd. High on Injunctions, Sec. 1236.

Should the defendants succeed in issuing and selling the bonds in question, such bonds, being in form negotiable securities, would go upon the market, where they would pass from hand to hand by mere delivery, and, of course, in the hands of a good faith purchaser, would be valid obligations. despite the fact that such issue would be *ultra vires* and fraudulent. Defendants have done just enough in the premises to give color of legality to the proceedings, and to render the threatened issue of bonds, *prima facie,* a valid issue. Burroughs on Taxation,

402–403; 1st Dillon's M. C. Secs. 549, 554, 536; Burrough on Public Securities, page 297–8.

It is conceded by appellates' counsel that an affirmative vote of the electors of Kidder county, authorizing the defendants to issue the bonds, is an essential prerequisite to their lawful issue.    Section 13 of the act under which defendants claim to have proceeded, expressly provides that a vote shall be had thereon.    See page 2, appellant's brief.

Where the authority to issue the bonds of a public corporation depends upon the approval of the electors, residing within the corporate limits, equity will interpose to prevent their issue until the question has been first legally and fairly submitted to the voters.    2nd High on Injunctions, §§ 1283, 1284, 1289; Lawson v. Schnellen, 33 Wis. 288; State v. Soldine County, 51 Mo. 350, II Amer. Rep. 454; Burroughs on Taxation, page 405.

The act requires that the propositions shall be submitted by the county commissioners—not by the county clerk—and that such submission shall be made at a special election.    The act does not name the precincts, nor fix the date of the special election, nor attempt to provide the mode or manner of calling or conducting such election.    Such special elections are governed by the provisions of Chapter 21, Rev. C. 1877, no part of which is in conflict with the special act.

The notice of the meeting of the board is void.    It purports to have been "by order of the board."    The statute devolves that duty on the clerk.    § 18, 1 Dillon Mun. Corp; § 259, note 3 (3d Ed.)

The notice is void because no year is stated.    1 Dillon Mun. Corp. § 264.

One member of the board is without power to adjourn.    1 Dillon Mun. Corp. §§ 269, 283, 267.

The act of February 21, 1883, does not provide for submitting alone the question of "building a court house and jail," but of "issuing bonds" as well.

It appears that a majority were opposed to contracting an indebtedness of twenty thousand dollars, and that consequently

v.4DAK.—6

and for that reason only, such majority were not allowed to vote upon the question.    It follows that there never has been a valid vote authorizing the issue of the bonds.

The averments of the complaint showing this fraudulent breach of official trust, this unblushing defiance of law and the right to vote, are, we submit, explicitly and fully made.    We very confidently cite the court to the allegations of the complaint.

It may have been a mere blunder in Steele and Price that of the omission to submit the question of "issuing the bonds;" but the affirmative act of calling the election "at Steele" alone, under the circumstances, assumes the hue and proportions of crime, crime against law, against the ballot.

Doubtless it will be argued, that electors residing in localities and precincts outside of the precinct of Steele, might, if they desired to do so, have voted at Steele.    Who can tell from the record whether or not this poor privilege would have been practically accorded?    But we answer the suggestion by citing certain sections of the criminal laws of the territory.    We cite Sec. 68 of the Penal Code to show that any voter not a resident of the precinct of Steele, who should unchallenged have cast his ballot at Steele, at the special election in question, would thereby commit a crime, i. e. a misdemeanor.    His offense would consist in knowingly voting in an election district in which he did not at the time reside.    .

But suppose some voter, residing at the precinct of Tappan or Dawson, undeterred by so slight a penalty as that inflicted as a punishment for a mere misdemeanor, and resolutely determined to exercise his privilege of voting, should, his vote being challenged, swear in his vote at Steele.    This would be felony, punishable by a term in the penitentiary under Sec. 15, Chap. 27, Rev. 1887, and Sec. 159, Penal Code.    His offense would be perjury in falsely swearing that he had been a resident of the precinct in which he voted, "five days next preceding the election."    Sec. 14, Chap. 27, *supra*.

We fully appreciate the fact that time and place are vital elements in all elections; and we urge as pertinent here the

consideration that it is not only essential that a place be designated, but the locality named must be the proper locality. As to the matter of time and place we cite McCrary on Elections, §§ 114, 115, 116, A, and 117; 11 Cal. 49; Cooley's Const. Lim. Margin, page 602, 603.

The authorities cited below fully justify an action in behalf of the territory. At common law such an action could only be brought by the realm and through the public prosecutor. This is still the rule in England and in many of the states. Nor does the right to institute such an action at all depend upon the existence of a statute expressly directing the attorney general to bring it. 26 Mich. 263, 278; 2nd High on Injunc. §§ 1304, 1554, 1570; Burrows on Public Securities, citing authorities. pages 293–94; 37 Wis. 416, 417; 11th American Reports, 454.

The common law rule has been expressly upheld and applied by this court. Wood *et al.* v. Bangs *et al.* 1 Dak. 179.

HUDSON, J. A special act of the legislature of Dakota, approved February 21, 1883, authorizes the county commissioners of Kidder county to erect and construct suitable buildings for a court house and jail at Steele, in said county,—the cost of the purchase of the site thereof, and of the construction of the court house and jail, and the complete furnishing of the same, not to exceed the sum of $20,000; and for the purpose of providing funds to pay the cost of the same, the county commissioners of said county were authorized to issue the bonds of said county of Kidder, running for a period of 15 years.

"Sec. 13. It shall be the duty of the county commissioners of said county to submit to the electors of said county, at a special election to be held in said county within sixty days after the passage of this act for the purpose of voting upon the same, the proposition of issuing such bonds and building such court house and jail; and it is made the duty of the county clerk of said county to give notice thereof, as provided in Section 5 of Chapter 27 of the Political Code for special elections. The voting on such questions at such election shall be by printed or written ballots, with words, 'For building court house and jail,

and issuing bonds—Yes. 'For building court house and jail, and issuing bonds—No.'"

Then follows a provision for a second submission of the same question in case a majority of all the votes cast shall be against said proposition, and closes as follows: "And all voting and canvassing of the votes on said questions shall be the same as provided by law for canvassing votes for county officers, and as hereinbefore provided; and if a majority of all the votes cast at such election be found to be for building said court house and jail, and issuing bonds, such court house and jail shall be built, and bonds may be issued as herein provided." The records of the board of county commissioners of Kidder county, showing their action under this special act, is as follows:

"EXHIBIT C—SPECIAL NOTICE.

Notice is hereby given that the board of county commissioners will meet February 28th, at 10 o'clock A. M. for the purpose of acting on applications for liquor licenses and other important business.

By order of board, this twenty-third day of February, 1883.

D. F. ALLISON, County Clerk."

"EXHIBIT A.

STEELE, D. T., February 28, 1883.

"Board met at 10 A. M. Present: William M. Price and D. F. Allison, clerk. A quorum not being present, board adjourned until 5 o'clock P. M.

D. F. ALLISON, County Clerk."

"Board met pursuant to adjournment, at 5 o'clock P. M. Present: W. F. Steele and W. M. Price. On motion of W. F. Steele, W. M. Price was made chairman *pro tem.* Moved and carried that a special election be held at the court house at Steele, March 13, 1883, for the purpose of submitting to the electors of said county the building of a court house and jail, and the county clerk be authorized to issue notices as provided by law. Moved and carried that J. F. Rung, Isaac Van Deu-

sen, and Charles H. Cronkhite act as judges of election. On motion, board adjourned until March 1, 10 A. M., 1883.

D. F. ALLISON, County Clerk."

"EXHIBIT B—NOTICE.

"To the Electors of Kidder County, Territory of Dakota: Notice is hereby given that on the second Tuesday, the thirteenth day, of March next, at the court house at the town of Steele, in said county of Kidder, a special election will be held, under the provision of Section 13 of an act of the territorial legislature, for the purpose of submitting to the electors of said county the proposition of bonding said county in the sum of twenty thousand dollars, and building a court house and jail at the county seat of said county, as provided by said act, and voting upon the same as provided by law. And said electors are hereby notified to designate upon their ballots the following words and figures to-wit: 'For building court house and jail, and issuing bonds—Yes;' 'For building court house and jail, and issuing bonds—No;'—which election will be open at nine o'clock in the morning, and will continue open until four o'clock in the afternoon of the same day.

[Seal.]                    D. F. ALLISON, County Clerk.

Dated this first day of March, 1883."

It appears that the judges of election so appointed assembled at Steele on the thirteenth day of March, 1883, opened the polls, received votes, and kept the polls of said election open from 9 o'clock in the morning until 4 o'clock in the afternoon, when they proceed to count the votes, and afterwards made a return to the commissioners, who canvassed the same, and declared and determined that the proposition to issue the bonds, and build a court house and jail, had been carried by a majority of the votes cast upon that question.

The complaint alleges, in substance, that the defendants intend and threaten to issue the bonds of said county under color of said act, and intend and threaten to negotiate and sell the same to good-faith purchasers, and thereby create a debt to be paid by the taxpayers of said county; that it is a corrupt

and unlawful attempt to effect the erection and construction, in advance of the needs and demands of the county, of expensive county buildings at the village of Steele, where the county seat is temporarily located, with the corrupt design and purpose of advancing the interests of said village, and especially advancing the price of real estate therein, at the expense of the taxpayers of said county. And further alleges that said commissioners of said county have not, at any time, submitted to the voters of said county the proposition of issuing the bonds of said county, as required by said act, but have corruptly and unlawfully made a pretended submission thereof under color of said act. That commissioners on the twenty-eighth day of February, 1883, pretended to pass a certain resolution which ordered and directed that a special election be held at said county of Kidder on the thirteenth day of March, 1883, for the purpose of submitting to the electors of said county the question of building a court house and jail; but did not at said session, or at any other time, manner, or form, submit to the voters of said county the question of issuing bonds of said county under said act of the legislature or otherwise. The said resolution is annexed and marked "Exhibit A," and is the only submission or attempted submission of the proposition contained in said Section 13 of said act ever made to the voters of said county of Kidder. That D. F. Allison, acting as clerk of said board and county clerk, posted and published in said county notices of said election, to be held at Steele and nowhere else in said county, a copy of which is annexed to the complaint and marked "B," which notices are the only notices of said pretended election ever given or published by said clerk or by any official of said county, and which notices were not published the length of time required by law. That prior to the general election of 1882 the board of county commissioners of said county of Kidder duly set forth and established three election precincts or districts in the county of Kidder, and said election precincts or districts have never at any time been changed or abolished, but ever since remained established as aforesaid, and said election precincts were severally named and

designated as "Steele," "Dawson," and "Tappan." That said
defendants, nor the board of county commissioners, nor any
other officer of said county, ever gave notice of any electon to
be held in the precinct of Tappan or Dawson on the thirteenth
of March, 1883, or at any other date, for the purpose of sub-
mitting the proposition to issue bonds or build a court house
and jail for said county; and that the electors of said county
residing in the precincts of Tappan and Dawson have never had
any opportunity whatever to vote upon the question of issuing
the bonds of said county, under the terms of said act of the
legislature, and have never voted thereon. That no polls were
opened in said precincts of Tappan and Dawson on the thir-
teenth day of March, 1883, and no election was held in either
of said precints on said day. That the voters in said precincts
of Tappan and Dawson were nearly unanimous in their opposi-
tion to the issuing of said bonds under the terms of said act,
which opposition was well known to the defendants when they
pretended to call said election; and said election was called at
Steele alone, with the corrupt and fraudulent design and pur-
pose of excluding the votes of Dawson and Tappan upon said
question of issuing bonds of said county. That said special
session of the board of commissioners was not called by any
lawful authority, nor was five days' notice thereof given, as
provided by law, of the objects of said special session, a copy
of which notice is annexed and marked "Exhibit C." Prayer
for an injunctional order restraining the commissioners of said
county of Kidder, their agents, servants, and attorneys, and
successors in office, from issuing the bonds of said county, and
building a court house and jail, and for general relief.

The defendants demurred to the complaint on the follow-
ing grounds: (1) The plaintiff has no capacity to sue; (2)
that there is a defect of parties; (3) that the complaint does
not state facts sufficient to constitute a cause of action. The
demurrer was overruled and the plaintiff had judgment, from
which this appeal is taken. Upon the argument upon the de-
murrer in the court below, and also in this court, the first two
grounds of demurrer were waived, and our attention was di-

rected to the third ground; that the complaint does not state facts sufficient to constitute a cause of action.

The broad and very comprehensive question presented in this record is, did the county commissioners of Kidder county submit to the electors of said county, at a special election, the proposition of issuing bonds and building a court house and jail, according to the spirit and intent of this special act? or did they fail to comply with the terms of the same, in certain important particulars, which had the effect to prevent or obstruct the complete expression of the popular will? The rules prescribed by law for conducting an election are designed chiefly to afford an opportunity for a free and fair exercise of the elective franchise, and to ascertain with certainty the result; and when an election, either general or special, is called, held, and conducted in such manner as to secure these objects, any of the provisions of law which only affect the mere preliminaries and details of an election are regarded as directory; and a failure to comply with these will not defeat the expressed will of the majority, if that is clearly manifest. The learned counsel who argued this case marshaled a motly array of authorities to substantiate the position that the failure of the county officers to comply with all the provisions of law in this case did not vitiate the election. But it will be found, upon a careful examination of these various decisions, that the principles of law enunciated were applicable only to the facts in each particular case. In every case that has fallen under our notice it is held that when the failure to comply with such conditions and requirements tends to mislead and obstruct a full and fair exercise of the right of the elective franchise, such conditions and requirements cannot be disregarded with impunity.

We are now to consider in this case whether the electors of Kidder county had a free and fair opportunity for casting their votes upon the proposition which the commissioners of that county were authorized to submit to them under this act. By the terms of the act this proposition was to be submitted to them at a special election to be called and appointed by this board, and for the purpose of calling and appointing such elec-

tion, and submitting said proposition, a meeting of the board
was necessary for this particular purpose, to be called by a no-
tice of five days, to be posted up in three public places, which
notice must state the object of calling the commissioners to-
gether.    Pol. Code, § 18.    The notice that was given of this
meeting stated the object to be, "acting upon applications for
liquor licenses, and other important business."    It does not in-
timate that the question of issuing bonds and building a court
house and jail is to be considered.    This notice was of some
importance, else the law would not require it to be posted.    It
becomes more so from the fact that this was a special act.
Everything required to be done must be done, and all persons
interested have a right to know what is being done.    It is only
by the notice which the law requires that they are presumed to
get such knowledge.    The record of the meeting that was held
fails to show that anything was done in relation to liquor
licenses, but a matter entirely foreign to that mentioned in the
notice was taken up,—that of bonding the county.    One of the
eminent counsel for the appellant contends that, although the
matter of issuing bonds and building a court house and jail was
not mentioned in the notice of this meeting, yet the board
could act upon any matter of business that could be transacted
at a stated meeting; in support of which he cites several athor-
ities.    These cases simply hold that, though the object of the
meeting was not stated in the notice, yet the board could do
any business that could be ordinarily transacted.    It can hardly
be said that calling a special election to vote upon the question
of issuing bonds of the county to run for a term of years was
so much in the ordinary course of business that it need not be
mentioned in the notice calling the meeting as business to come
before the board.    It would appear from the record that grant-
ing of liquor licenses was deemed to be of so much importance
that it should be mentioned; but the bonding of a new county
to the extent of $20,000 was so trivial a matter, and so much in
the ordinary course of business with the county board, that
mention of it was unnecessary, and would be simply a work of
supererogation.

If it be conceded that the notice calling the commissioners together was a sufficient and a substantial compliance with the law, or that its defects were unimportant, was there a special session of the board of county commissioners that could act upon any matter at the hour named for the meeting? But one of the commissioners was present; then, as the record informs us, the board adjourned to 5 o'clock P. M.; but it does not appear to what day this adjournment was had, and it is difficult to see how one member constituted a board which had the power to adjourn or do anything else. The record also informs us that the board met at 5 o'clock P. M., pursuant to adjournment, leaving date entirely blank. Now, giving the most favorable construction to these proceedings up to this assemblage of two commissioners with the clerk at whatever time it might have been, we are led to suppose that this assemblage was to take action under the special act of February 21, 1883, authorizing the board to submit to the electors of said county, at a special election, the proposition of issuing bonds, and building a court house and jail. But it appears that the most important part of the proposition, namely, the issuing bonds, was not touched upon at all; the question submitted was only that of building a court house and jail. We cannot discover, in the resolution as adopted, any attempt or intention to call a special election for the purpose mentioned in Section 13 of the act; namely, an election to vote upon "the proposition of issuing such bonds, and building a court house and jail."

On examining the notice subsequently given by the clerk, it does not appear that it follows or purports to be in pursuance of the resolution of the board, but declares the special election to be for the purpose of submitting an entirely different proposition from that mentioned in said resolution, or in any previous proceedings of the board, and hence was without authority from any source. If it is claimed that it was authorized by the special act of February 21, 1883, it should comply with Section 5 of Chapter 27 of the Political Code, as said special act requires. The notice is fatally defective in two important particulars. *First.* It informs the electors that a special elec-

tion for the entire county will be held at the court house at
Steele.   This was in accord with the resolution in this respect,
but is not in accord with Section 5 of Chapter 27, which re-
quires "three written notices for each election precinct." It
was noticed in only one.   The precincts of Dawson and Tap-
pan were ignored.   *Second.*   No authority is given in the reso-
lution or the act of February 21st for bonding the county in the
sum of $20,000.   This is the limit for which bonds might be
issued, but the amount is to be determined by the cost of the
site, the constructing and furnishing of the buildings, and this
must be ascertained before any proposition for issuing bonds
can be submitted for any sum, and then for only the sum re-
quired, not to exceed $20,000.   Sections 4, 5, Act. Feb. 21, 1883.
The defect first pointed out in the notice (provided the clerk
had authority to issue it) is fatal to this election, if no other
existed.   The board of county commissioners of the county of
Steele had, prior to the general election of 1882, established
three election precincts in said county,—namely, Steele, Daw-
son, and Tappan,—and said precincts had never at any time
been changed or abolished, but remained the voting precincts
of that county until changed by some direct act by some com-
petent authority.

The counsel for the appellant contends that ordering an
election at Steele by the county commissioners was a discon-
tinuance of all other voting places, and expends considerable
time in attempting to show that the county commissioners had
the power to abolish and discontinue voting precincts; but the
statutes do not, in terms, give any such power.   Section 29,
Chapter 21, Pol. Code, confers power on the commissioners
to "establish election precincts in their county;" and Section
23, Chapter 27, power to "set off election precincts and dis-
tricts."   This is all.   However successful this effort to
show that the county commissioners have the power con-
tended for, the argument fails when we look at this record,
and do not find that they even attempted to exercise any
such power.   When a *quasi* judicial body performs any
act within its power to perform, it should be shown and

brought to the knowledge of the citizens by some record; but in this case such an act or intention is not even intimated by this record or otherwise; it was simply a disregard of the rights of the voters residing in other precincts than Steele. It is very apparent that the electors residing in Dawson and Tappan precincts had no opportunity for a free and fair ex pression by their votes upon the propositions submitted. The claim that is made, that these people might have voted at Steele, is simply ridiculous, in view of the fact that Section 68, Penal Code, provides that every person who votes or offers to vote in any election district in which he does not reside, is guilty of a misdemeanor. When we look at all the proceedings, from the passage of the act on the twenty-first day of February up to the time this voting occurred, embracing only twenty days, it is more than doubtful whether the allegations in the complaint, "that said special election was called at Steele alone with the corrupt and fraudulent design and purpose of excluding the vote of Dawson and Tappan," is not supported by the facts. In any view we can take of this case, we think this election cannot be sustained; and that in overruling the demurrer, and continuing the injunction restraining the issue of bonds under the said act, the district court committed no error.

The judgment of the court below is affirmed. All the justices concurring.