(158 App. Div. 263.)

### In re COMMON COUNCIL OF CITY OF LACKAWANNA.

(Supreme Court, Appellate Division, Fourth Department. July 8, 1913.)

1. CONSTITUTIONAL LAW (§ 61*)—MUNICIPAL CORPORATIONS (§ 907*)—LEGISLATIVE POWERS—DELEGATION TO COURT—LEGALIZING MUNICIPAL BONDS.

General Municipal Law (Laws 1911, c. 769) art. 2a, as to legalizing. by the court of proceedings for issuance of municipal bonds, is not a delegation of legislative power to the court, and so unconstitutional; its effect, under sections 22, 23, 26, 28, being to delegate no discretionary power to the court, but merely to enumerate irregularities in the proceedings preliminary to the issuance which shall be considered immaterial, and to permit an ascertainment of the facts by the court, and a determination whether they bring the case within the operation of the statute.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 103–107; Dec. Dig. § 61;* Municipal Corporations, Cent. Dig. § 1895; Dec. Dig. § 907.*]

2. MUNICIPAL CORPORATIONS (§ 867*)—BOND ISSUES—LEGALIZING PROCEEDINGS—IRREGULARITIES.

The charter of a city (Laws 1909, c. 574, § 86) requiring the vote of the citizens on the question of an expenditure for an improvement to be on the amount specified in the estimate of the council and in the notice of election, the fact that the ballot specifies $5,000 more than the resolution and notice is not a mere irregularity, within General Municipal Law (Laws 1911, c. 769) art. 2a, as to legalizing proceedings for issuance of municipal bonds.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1841; Dec. Dig. § 867.*]

3. MUNICIPAL CORPORATIONS (§ 867*)—EXPENDITURES—ELECTION—ESTIMATE, NOTICE, AND BALLOT.

The charter of a city (Laws 1909, c. 574, § 86) providing that, when the council resolve that an extraordinary expenditure ought to be made for a purpose set out in the resolution, it shall make an estimate of the sum necessary therefor, and publish such resolution and estimate, with notice of a special election to determine whether the amount of such ex-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

penditure shall be raised by taxation, and providing that the ballot shall state the amount of the expenditure, requires the amount stated in the ballot to be the same as estimated by the council and published in the notice.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1841; Dec. Dig. § 867.*]

Lambert, J., dissenting.

Appeal from Special Term, Erie County.

In the matter of the application of the Common Council of the City of Lackawanna for an order legalizing proceedings prior to the issue and sale of $130,000 road improvement bonds. From an order legalizing the same, an intervening taxpayer appeals. Reversed, and application denied.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

Lewis L. Delafield, of New York City, for appellant.
Myron S. Short, of Lackawanna, for respondents.

KRUSE, P. J.    [1-3] I concur in the construction Mr. Justice LAMBERT puts upon the statute under which this proceeding is brought and all he says upon that subject. It seems to me, however, that the conclusion which he reaches, that the infirmity in the proceedings was a mere irregularity or technicality, is not well founded. The charter of the city of Lackawanna requires the common council to publish the resolutions and estimates, together with the notice of the time and place of the special election, and the specific question to be decided at the special election, according to the statute, is whether the amount of such expenditure shall be raised by tax. The ballot is required to state the amount of the expenditure. I think the statute requires that this amount shall be the amount as estimated by the common council and published in the notice.

I think the application should have been denied.

Order reversed, with $10 costs and disbursements, and application denied, with $10 costs.

ROBSON and FOOTE, JJ., concur.

MERRELL, J. (concurring).    I think the legislation enacted by article 2a of the General Municipal Law is an attempted delegation by the Legislature of purely legislative functions, and therefore unconstitutional. Applied to this case, it in effect permits the court to dispense with a jurisdictional prerequisite to a bond issue provided by statute. Furthermore, it seems to me that the variance between the amount of the advertised bond issue and that actually submitted is more than an irregularity. The object of the publication under section 86 of the Lackawanna City Charter must have been, not only to advise the taxpayers of the proposed improvement, but *principally* what it would *cost*. What would prevent the common council publishing an estimate and proposed expenditure of a trifling sum, thus leading the taxpayers to refrain from attending the election because of the small amount proposed to be raised, and, when actually submitted,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

swell the amount to whatever proportions might be wished? If an increase of $10,000 can be made, as was in the case at bar, why not more?

I think the order appealed from should be reversed, with costs to the appellant.

LAMBERT, J. (dissenting). This is a proceeding brought under article 2a of the General Municipal Law (chapter 769, Laws of 1911). Its purpose is to have declared legal the preliminary proceedings underlying certain bond issues of the city of Lackawanna, Erie county. These bonds are sought to be issued pursuant to section 86 of the charter of such city (chapter 574, Laws of 1909), which section provides, in part, as follows:

"Taxpayers to Vote on Extraordinary Expenditures.—Whenever the common council shall resolve by the affirmative vote of at least three of its members that an extraordinary expenditure ought, for the benefit of the city, to be made for any specific purpose set forth in the resolution, it shall make an estimate of the sum necessary therefor and for all such purposes, if there be more than one, and publish such resolutions and estimates once in each week for three successive weeks, in the official newspaper, together with a notice that at a time and place therein specified a special election of the taxpayers of the city will be held to decide whether the amount of such expenditure shall be raised by tax."

Then follow the regulations for the holding of such elections. Three sets of bonds were sought to be issued in this manner for paving purposes. Question arises only as to two of such issues of bonds, and the sole irregularity urged in connection with same is that the estimates, having been made by the council for the sums of $25,000 and $40,000, respectively, the propositions, when submitted to vote of the taxpayers, were submitted at the sums of $30,000 and $45,000, respectively an increase of $5,000 in each instance.

By section 22, article 2a, of the General Municipal Law, it is provided that proceedings taken by a municipal corporation for the issuing of bonds pursuant to statute "may be legalized and confirmed by the Supreme Court in the manner and with the effect" provided by such article. By section 23 of the same article, provision is made for the filing of a petition with such court, either in behalf of the municipality or any other person in interest, and which petition is required to identify the statute under which it is sought to issue the bonds, to state the amount of such bonds and the time of their maturity, and to set forth in detail the steps taken in respect to the issuance and sale thereof. Such petition is required to pray that such court "investigate the law and facts in relation to such proceedings and determine whether such proceedings substantially complied with the statute under which it is proposed to issue and sell such bonds." And it is permitted also to include in such petition specific mention of any particular in which the applicant deems that such statute has not been complied with. The article then makes provision for the giving of general notice of such application for at least 20 days prior to the hearing of same by both publication and posting. At any time before such hearing, any person in interest is permitted to file a verified answer

to such petition. Further provision is then made for a hearing by and before such court, and for the ascertainment of the facts involved, by the examination of witnesses, if required, and by the filing of proof by affidavit.

By section 26 of such article it is enacted:

"If, after such hearing and investigation, such court is satisfied * * * that the proceedings taken by such municipal corporation, its officers, agents or voters, prior to the issuance and sale of such bonds, * * * substantially complied with the statute under which it is proposed to issue such bonds, * * * the court may, by order, legalize and confirm the proceedings taken prior to the issue and sale of such proposed bonds, * * * with the same force and effect as though all the provisions of law in relation to such proceedings and form had been strictly complied with. The court may determine that such statute was substantially complied with * * * notwithstanding any irregularity or technicality in the form of the proposition or resolution proposing or authorizing such issue, or in the notice of the election or of the meeting of the board or body adopting such resolution or authorization, or in the time or manner of service thereof, or in the conduct of the election or meeting at which such proposition or authorization was adopted, * * * or notwithstanding any other technical or formal irregularity of like nature in such proceedings. If the court is satisfied that the proceedings for the issuance and sale of such bonds did not substantially comply with the statute * * * he [the court] may make an order accordingly, specifying the particulars in which he [the court] deems that such proceedings failed to comply with such statute."

By section 28 of such article the effect of a determination of validity by the court is declared as follows:

"Effect of Determination.—If the order of the Supreme Court legalizes and confirms such proceedings, upon the expiration of the time to appeal therefrom, if no appeal be taken, or upon the entry of the final order of the Appellate Division confirming such order of the Supreme Court, such proceedings shall be deemed legalized and confirmed, * * * and the validity of such bonds shall not thereafter be in any manner questioned by reason of any defect or irregularity in such preliminary proceedings and notwithstanding any such irregularity or defect shall be legal and binding obligations upon the municipal corporation issuing and selling the same. * * * "

Appellant, an intervening taxpayer, attacks the order appealed from, not only upon the alleged defect in the preliminary proceedings above mentioned, but also upon a claim that the entire scheme of article 2a of the General Municipal Law is unconstitutional, in that it is an attempted delegation by the Legislature of strictly legislative functions to the judicial arm of the state government. This, it is claimed, is in derogation of article 3, section 1, and article 6, section 10, of the state Constitution.

That the power to fix the prerequisites of a valid bond issue by a municipality rests with the Legislature seems beyond question, and the argument follows, with great force, that the power to vary those prerequisites, when once established, rests with the same body having the initial power to fix the same. It is also a matter of common knowledge that, prior to the enactment of article 2a of the General Municipal Law, the aid of the Legislature was frequently invoked to correct, by special enactments, technical and other defects and irregularities in municipal bond issues. In fact, a custom became more or less prevalent among purchasers of such securities of requiring such

special enactments in a majority of cases for the purpose of insuring such bonds from technical attack. It is our understanding that this statute here in question was designed to relieve the Legislature from such burden, and to accomplish, to some extent, at least, by its general provisions, the results sought through such special enactments.

While the undoubted power existed in the Legislature to ratify, despite irregularities in such bond issues, and has been exercised without question for many years, and while the Legislature has undoubted power to delegate, within constitutional limitations, its powers and functions (Village of Saratoga Springs v. Saratoga Springs Gas & Electric Company, 191 N. Y. 123, 83 N. E. 693, 18 L. R. A. (N. S.) 713; Tifft v. City of Buffalo, 82 N. Y. 204), yet it seems plain that an attempted delegation by the Legislature to the judiciary of legislative powers would offend the constitutional inhibition against the performance by the judiciary of such functions.

However, the construction which we place upon this statute does not offend such constitutional provisions. A careful study of the statute discloses that no legislative function is committed to the court. By section 26 of the article the sole question submitted to the court to determine is whether, in the preliminary proceedings had, there has been a substantial compliance with statutory requirements, and even that determination is hedged about by legislative declaration, found in such section, of what character and class of irregularities may be excused and overlooked in reaching the determination of substantial compliance. The determination of the question of substantial compliance involves no element of discretion upon the part of the court. It is merely the determination of a question of fact. The court may not suspend or ignore any statutory requirement. It can only ascertain the facts, and determine whether such facts bring the case within the operation of the statute. If defects exist, other than those mentioned in section 26, the court not only is not permitted to grant the legalizing order, but is expressly required to refuse to do so. Such determination of a question of fact is most fittingly committed to that branch of the government which customarily has such matters in charge.

It is, perhaps, the form which the order is required to take—i. e., that of legalizing and ratifying the bond issue—which gives rise to the argument that a discretion and a power to suspend statutory requirements of a valid bond issue is committed to the court. But that there was a contrary legislative intent seems clear. The effect of the court's determination is not left to be inferred from the form of the order. By section 28 it is expressly declared that, from the time that the court has finally determined that there has been a substantial compliance with the statutory requirements, the same shall be deemed legalized and confirmed. There is, then, found in article 2a of the General Municipal Law a simple and comprehensive legislative scheme, whereby the Legislature has declared in advance that all municipal bond issues shall be valid, wherein the sole objection thereto lies in certain specified and defined technical irregularities, and whereby there is committed to the Supreme Court the purely judicial func-

tion of determining, in each instance where the statute is invoked, the question of fact of whether there are, or not, any other irregularities than those mentioned in such statute.  It is thus made clear that the bond issues acquire their validity solely from the legislative enactment, and not from the court, and there is, therefore, no legislative function committed to the court.  Such construction gives a permissible and logical effect to every portion of the statute, and it is, therefore, our duty to adopt it as the true construction, rather than one which would lead to prohibited and unconstitutional results.  Admiral Realty Co. v. City of New York, 206 N. Y. 110, 99 N. E. 241; People ex rel. Simon v. Bradley, 207 N. Y. 592, 101 N. E. 766.

The court at a Special Term decided that the increase of $5,000, submitted to a taxpayer's vote in each of the two bond issues, over and above the "estimate" published, constituted an irregularity within the meaning of the statute, and made the order appealed from evidencing such decision.  Having reached the conclusion that the statute is constitutional, the order made should be sustained, in the event either that such a departure in the amount of the "estimate" and vote was an irregularity, or, on the other hand, that the preliminary proceedings met the requirements of the city charter.

Excepting Mr. Justice MERRELL, my Associates agree with the conclusion here reached, that the statute is constitutional, but conclude that the variance above mentioned is such a departure from the commands of the charter that the proceedings, taken as a taxing scheme, are void; in other words, that it is a jurisdictional defect.  Of course, if such a construction is warranted, and the variance is properly classified as a jurisdictional defect, the result is not disputed that the bond issues would register an illegal obligation.

All legislative power of government, including the creation of a municipality, rests in the state Legislature, and no one would dispute the power of the Legislature to create this bonded indebtedness against this municipality, provided same was for its benefit.  The Legislature could delegate and has delegated such powers to the municipality, with the limitations and conditions contained in the charter.  Hence it is to the charter that we must look, in determining whether there has been a proper exercise of such delegated powers, and, if not a strict compliance therewith, whether the variance is of a substantial or of a technical character.

It is to be noted, that in its reference to the amount to be expended for the improvement the charter uses the term "expenditure" in every instance, except in reference to the making of the "estimate" and its publication.  Following the determination of the council that the "expenditure" ought to be made, the council is required to "estimate" the amount necessary therefor and to publish such "resolutions and estimates," together with a notice of a special election to decide whether the amount of such "expenditure" shall be raised by tax.  Later it is provided that "the common council shall cause the sum or sums of money thus voted" to be assessed, provided that "the sum or sums of money thus appropriated" shall not exceed 2 per centum of the assessed valuation; but, in case "the sum or sums of money thus voted"

shall exceed such amount, then bonds shall be issued as therein provided, and, further:

"After such special tax or taxes shall have been authorized, * * * the common council may proceed to authorize the expenditure of the amount thereof, for the purposes specified in its published statement as aforesaid and sanctioned by such election."

From such provisions I see no indication of an intention to limit the amount of the expenditure to the amount of the estimate. The section certainly does not specifically so provide, nor do I find therein any inference of such intent upon the part of the Legislature. The initial determination of the advisability of the improvement is left to the council. The use of the word "estimate," in the provision for the making of such and its publication, clearly indicates that it was not of a fixed or permanent character, because it could not be definitely ascertained in advance of bids for the work, but was merely an approximation of the amount required. The provision for publication of an "estimate" furnishes the principal argument that the amount of the estimate is to be the amount voted upon. But I see no necessity of giving it such significance. By its publication, although the needed amount remained uncertain and indefinite, the community and the taxpayers are afforded some intimation of the probable cost of the improvement and were given notice that at a later and specified time an opportunity to decide by vote whether the amount of the "expenditure" required for such improvement should be authorized. Had it been intended to limit such vote to the amount of the estimate, such intention could have been clearly so declared, by the use of the word "estimate" in such provision for the holding of the election. Apparently, then, the way is left clear for the council to ask authorization for the expenditure of such an amount as would prove safely adequate for the contemplated improvement, and without limitation, flowing from their previous published estimate.

But in this connection it is urged that such construction results or may result in a fraud upon those voters who might rely upon the estimate so published, and, being willing that such an amount be expended for the improvement, might refrain from attending such election, only to find that by such election a sum had been authorized in excess to an amount for which they would have voted, if present.

There are several answers to such suggestion. With the scope of the statute understood, no one would be misled. Then, too, with the way left open for all such voters to protect themselves, I see no justification for reading something into this statute, or for giving it a strained construction, to protect those electors who do not avail themselves of the means at their command for their own protection. Further, the authorization by vote does not finally apply these moneys. Any wasteful or illegal expenditure thereof is still within the control of the courts, upon the application of any taxpayer. I am unable to see wherein the preliminary proceedings fail to comply with the charter requirements. But if a construction of the various charter provisions is to be adopted, such as will require the vote to be upon the same amount specified in the estimate, then it would seem that the

failure to so comply was of a technical, rather than of a substantial, character. The sole province of the electors is to limit the amount of the expenditure. There is vested in the taxpayers no control over the actual expenditure of the money, but their action simply affords authority to the council to proceed to expend such moneys, up to the amount voted. Viewed in this light, there would seem to be no material deviation from such statutory provisions, even under such strict construction.

The order appealed from should be affirmed, with costs.