Argued January 20; affirmed January 31, 1939

# HANSEN *v.* MALHEUR COUNTY ET AL.

(86 P. (2d) 964)

580

*M. A. Biggs,* of Ontario, and *John W. Shuler,* of Portland, for appellants.

*Robert D. Lytle,* of Vale (Lytle & Swan, of Vale, on the brief), for respondent.

■ KELLY, J. First, it is only fair to the record to say that in sister jurisdictions, the authorities expressly hold that a resident taxpayer may invoke an injunction to prevent an unlawful bond issue. A list of many of these authorities appears in the notes to section 2757 of Vol. 6, (2d Ed.) McQuillin on Municipal Corporations. In this jurisdiction the procedure conforms to the doctrine of these authorities in that respect.

The issuance of the proposed bonds in suit is sought to be supported by the provisions of section 10 of article XI of the constitution of Oregon, and of chapter 20, title 44, Oregon Code 1930.

In so far as applicable to the facts herein, section 10 of article XI of the Oregon Constitution is as follows:

"Section 10, Limitation upon powers of county to contract debts—Permanent roads.

"No county shall create any debts or liabilities which shall singly or in the aggregate, with previous debts or liabilities, exceed the sum of $5,000, except to suppress insurrection or repel invasion or to build or maintain permanent roads within the county; and debts for permanent roads shall be incurred only on approval of a majority of those voting on the question, and shall not either singly or in the aggregate, with previous debts and liabilities incurred for that purpose, exceed 6 per cent of the assessed valuation of all the property in the county."

Section 44-2010, Oregon Code 1930, being originally section 10 of chapter 103, Oregon Laws 1913, and now being one of the sections of said chapter 20, title 44 of said Oregon Code 1930, as amended by chapter 217, Oregon Laws 1931, in so far as it is applicable to the record in this case provides:

"The county court of its own motion may submit the question of issuing bonds for the purpose mentioned in section 44-2001 at any general election. This may be

done by an order of the county court which shall be entered in the journal at least forty days next preceding any general election, which order shall set out the amount of bonds proposed to be issued, the length of time they shall run, and the maximum rate of interest they shall bear. After having entered such order, the court shall proceed to submit the question to the voters of the county in the same manner and with like effect as upon the petition provided for in this act." Oregon Laws 1931, p. 343.

The only petition provided for in the act (chapter 103, General Laws of Oregon 1913, p. 170 et seq.) having for its object the submission of such question at a general election is authorized by section 44-2009, Oregon Code 1930, as amended by chapter 83, Oregon Laws, 1931, pp. 119 and 120, which provides that when such a petition is presented in the county court, said court "shall take the same action respecting such petition as provided for in section 44-2004, Oregon Code 1930, except that instead of calling a special election as therein provided, it shall submit the question to the voters of the county at the next general election."

Said section 44-2004, Oregon Code 1930, among other things, provides that upon approving the petition of the required number of registered voters therefor, "the county court shall then make an order directing that a special election shall be called and held in that county for the purpose as specified in the petition at a time to be then fixed by the court, which shall not be less than twenty nor more than forty days after the date of making the order."

██ The order of the county court appointed May 20, 1938, as the day upon which the question of the proposed bond issue should be submitted to the voters of Malheur county. That was the day upon which a primary nominating election was held. A primary nomi-

nating election is a general election: *Taylor v. Multnomah County*, 119 Or. 123, 248 P. 167. An election for issuance of road bonds is a special election although held on the same day by the same officers as a general election: *Wilson v. Wasco County*, 83 Or. 147, 163 P. 317; *Norton v. Coos County*, 113 Or. 618, 233 P. 864; *Hill et al. v. Hartzell*, 121 Or. 4, 252 P. 552.

Section 44-2006, Oregon Code 1930, which is section 6 of said chapter 103, Oregon Laws 1913, among other things, prescribes that:

"Whenever a special election shall be ordered as provided in this act the county court shall cause printed notices thereof, signed by the county clerk, to be posted in like manner as notices of a general election are now posted, which notices shall particularly specify the amount of bonds proposed to be issued, the length of time they shall run, and the maximum rate of interest they shall bear, the road or roads to be improved, and the amount to be expended on each."

By reference to an exhibit attached to plaintiff's complaint, it appears therefrom, in addition to specifying certain roads to be improved and the amount to be expended on each, the notices of election herein declared in effect that $36,800 of the proposed $100,000 to be received from the sale of said bonds should be expended as follows:

"Road building machinery, ...........$12,500.00
Supervision and engineering, .....  3,000.00
Maintenance, .....................  3,500.00
To be turned over to county
court to be used on roads not
cared for in this budget, ............. 17,800.00."

It is alleged in the complaint that "said election is illegal and void for the reason that the county court did not comply with the law * * * in the notices thereof in

specifying the roads to be improved and the amounts to be expended on each.''

■ The notice in its recitals should observe the mandatory legal provisions, otherwise the election and the action authorized thereby will be void: Vol. 5, McQuillin on Municipal Corporations (2d Ed.) Sec. 2356.

The matter is thus summarized by Prof. Jones in his work on Bonds and Bond Securities:

''Matters that go to the power of a municipality to conduct an election looking to the issuance of bonds, or that are made conditions precedent to the validity of the election when ordered and held, cannot be omitted, ignored or substantially departed from. An election cannot be valid where there has been no attempt to comply with the applicable statute, and it does not serve to infuse life into such an election that the municipality acted in good faith, committed no fraud, or that it could not be shown that a different result would have been obtained had the statute been complied with. Such a situation arises, however, where either the power does not exist, or there is adequate power but no attempt to comply with it, or the compliance is not substantial. The ultimate object to be accomplished is to ascertain the will of the voters after they have had a fair, free, and full opportunity of expressing it. Where this has been given in proceedings conducted in a good-faith endeavor to follow legal requirement, and the departure from statutory or constitutional prescriptions amounts only to an irregularity, such irregularity is not a sufficient reason for nullifying the election. This is on the assumption that there was no defrauding of the voters, or misleading them, and that all were apparently advised fully as to the date of the election and the purpose thereof, and were accorded a reasonable opportunity to participate. Though an irregularity be shown, the election will not thereby be invalidated unless it be further demonstrated that the result would have been different had there been a strict compliance with the statute. Such irregularities

as here spoken of may consist of variation from the exact requirement as to the time and manner of giving notice of the election; misconduct of the election officials; irregularity in the form of the ballot; slight delay in opening the polls, and even fraud and bribery, if they are not practiced to such an extent as to control the result of the election." Vol. 1, Jones, Bonds and Bond Securities, Section 220, pp. 216, 217 and 218.

■ The following cases hold that the statutory requirement must be complied with to the effect that the notice of election must state the purpose of the proposed bond issue: *Territory v. Steele*, 4 Dak. 78, 23 N. W. 91; *Smith v. Dublin*, 113 Ga. 833, 39 S. E. 327; *Wilkins v. Waynesboro*, 116 Ga. 359, 42 S. E. 767; *Thatcher v. People*, 93 Ill. 240; *Martin v. Bennett*, 139 Mo. App. 237, 122 S. W. 779; *Lawson v. Lincoln*, 86 App. Div. 217, 83 N. Y. S. 667; *Stern v. Fargo*, 18 N. D. 289, 122 N. W. 403, 26 L. R. A. (N. S.) 665; *State v. Heber City*, 26 Utah 1, 102 P. 309; *Ross v. Lipscomb*, 83 S. C. 126, 65 S. E. 451, 137 Am. St. Rep. 794; *City of Bozeman et al. v. Sweet, Causey, Foster & Co.*, (C. C. A. 9th Cir.) 246 Fed. 370; *Clarksdale v. Broaddus*, 77 Miss. 667, 28 So. 954; *McMahon v. Board of Sup.*, 46 Cal. 214; *Ex parte Covington*, 160 Ky. 146, 169 S. W. 718; *Helton v. Martin*, 141 La. 835, 75 So. 740; *Re Com. Council v. Lackawanna*, 143 N. Y. S. 198, 158 App. Div. 263; *Kerlin v. Devils Lake*, 25 N. D. 207, 141 N. W. 756, Ann. Cas. 1915C, 624; *McGuire v. Philadelphia*, 245 Pa. 307, 91 Atl. 628.

This rule is expressly approved in Vol. 1, Jones on Bonds and Bond Securities, Section 210, p. 197, but *Lang v. Cavalier*, 59 N. D. 75, 228 N. W. 819, is cited by Prof. Jones in a footnote to said section in support of the statement therein to the effect that it has been judicially declared that failure of the notice to state the purpose of the bonds is at most an irregularity. We do

not so construe the opinion of the North Dakota court so cited. There, the statute required the purpose of the proposed issue to be stated in the initial resolution. (Section 7, chapter 196, Laws of North Dakota, 1927, p. 336.) This statute also prescribed that the notice of election should contain a complete copy of such initial resolution. (See 9 ibid.) We quote from the decision of the court:

"But as we read the record it seems clear that the bond issue in question and all of the proceedings incident thereto were under the provisions of chapter 196, Sess. Laws 1927. The preliminary resolution, the notice, and the ballot, all conform to the requirements of this chapter, and thus there is no ground for the plaintiff's attack." *Lang v. Cavalier*, supra.

By incorporating in the notice of election a complete copy of the initial resolution containing a statement of the purpose of the issue, certainly the notice of election was made to state such purpose.

■■ The purpose for which bonds are proposed to be issued must be such as the law authorizes. The constitutional provision above quoted (section 10 article XI of Oregon Constitution) inhibits the incurrence of county debts or liabilities in excess of $5,000, "except * * * to build or maintain permanent roads within the county." Neither the order of the court nor the notice of election gives any intimation that the last item of proposed expenditure in the sum of $17,800 is to build or maintain any permanent road or roads. An issue of bonds for funds to be expended for road building machinery, maintenance and to be turned over to the county court to be used in accordance with the undeclared intention of the county commissioners on roads not specified or described as permanent roads is not within the purview of the constitutional provi-

sion exempting bond issues to build or maintain permanent roads from the constitutional debt limitation of $5,000.

Upon argument, it was suggested that the proposed issue of bonds should be validated to the extent that the funds to be derived therefrom are intended to be expended upon specified permanent roads.

In *Parks v. West*, (Tex. Civ. App.) 108 S. W. 466, an attempt was made to submit two propositions to the electorate,—(1) Whether certain territory should be incorporated as an independent school district; and (2) whether there should be a bond issue. The court of civil appeals of Texas affirmed an order of the district court in so far as it adjudged that the incorporation of the independent school district was in accordance with law and valid; but reversed the order of the district court in so far as it validated the proposed bond issue: *Parks v. West*, supra. In that case, it was manifest that a majority of the voters were in favor of incorporating the school district, and that a different result would not have ensued if the second proposition had been properly submitted. In *Kerlin v. Devils Lake*, supra, the supreme court of North Dakota, considered the result of an election at which two propositions were submitted: (1) increase in debt limit and (2) issuance of bonds. In that case, it was held that upon the first proposition, the election was valid, but invalid upon the second. This holding is based upon an analysis of the reasons prompting an affirmative vote on both propositions and the conclusion that independently of the question of issuing bonds, a majority of the voters had legally and fairly expressed their wish that the debt limit be increased.

■ In the original opinion of this court in *Hawley v. Anderson*, 99 Or. 191, 190 P. 1097, 195 P. 358, it was held that an election authorizing the issuance of bonds

in excess of the legal limit did not permit the issuance of bonds up to that limit, since the bond issue of the smaller amount presents an entirely different question from that submitted.

Upon rehearing, the result of the original opinion was overruled in *Hawley v. Anderson*, supra, but we think that the reasoning upon the point just stated is sound and controlling in the case at bar.

We also think that a different result probably would have ensued at the election in suit if only the issue of bonds for building or maintaining permanent roads had been submitted to the voters.

■ The statute requires that the notice of election shall particularly specify the amount of bonds proposed to be issued. (Section 44-2006, Oregon Code 1930.) Under a similar statutory provision, the supreme court of North Dakota held that the language, "$100,000, or such part thereof as may be required" failed to comply with the statute. In its discussion of this phase of the case, the North Dakota court said:

" * * * we conclude that it is essential to the legality of the proceedings that both the resolution of the council and the notice of election state definitely the amount of bonds for and against which the vote is to be taken. Without such statement the question is not fairly presented to the electors. They are entitled to know definitely what is proposed in the way of increasing the indebtedness of the city. Under the notice published, based on the resolution of the council, that body may decide to issue any part of the $100,000 in bonds. The elector may desire to oppose the proposition if the amount so stated definitely were larger or smaller." *Stern v. City of Fargo*, 18 N. D. 289, 122 N. W. 403, 26 L. R. A. (N. S.) 665.

Other courts have relaxed the strictness of the rule as to the matter of stating the amount of a proposed

bond issue, but we are impressed by the reasoning in *Stern v. City of Fargo,* supra, upon the right of the electoral to have no other proposition upheld than the one which they approve. To uphold an issue of bonds in the instant case in an amount substantially less than the amount specified in the order and in the notice of election would be to declare a different result than the one sanctioned by those voting upon the question, a result which we think probably would not have been approved by many who voted affirmatively upon the proposition which actually was presented to them.

It has also been suggested that the order entered by the county court, declaring that a majority of voters at such election had voted in favor of issuing such bonds, is absolutely conclusive of the regularity of all the proceedings in reference to the matter: Section 44-2011, Oregon Code 1930. To so hold would be to treat an order of the county court as paramount to the provisions of the constitution first hereinabove quoted. That constitutional provision prohibits the creation by a county of any debts or liabilities in excess of $5,000, except to suppress insurrection, repel invasion or build or maintain permanent roads. If this court should uphold the right of a county to authorize the issuance of bonds in the sum of $12,500 to purchase road building machinery and for the purpose of enabling its county commissioners to expend the further sum of $17,800, upon unspecified and undescribed roads in accordance with the commissioners undeclared unknown intention and one doubtless subsequently to be formed, it would nullify that constitutional restriction. The power of the legislature is so limited by that constitutional restriction that no valid statute inconsistent therewith can be enacted: *State ex rel. v. Hawks,* 110 Or. 497,

222 P. 1071. Certainly, a statute which purports to give such authority to the county court cannot be given any such construction.

■ Mere irregularities are cured by the order of the court declaring the result of the election: *Clark v. Hood River Co.*, 73 Or. 336, 143 P. 897; *Elliott v. Tillamook Co.*, 86 Or. 427, 168 P. 77.

In *Clark v. Hood River Co.*, supra, the question was considered as to the effect of a defective description of a road. We quote from the opinion in that case:

"Better and more definite language might have been chosen and a better description made, but the one actually given is not so indefinite as to be wholly void.

"While an entire lack of description will render the proceeding void, mere irregularities are cured by the order of the court declaring the result of the election: Laws 1913 c. 103 § 11."

In the case at bar, as to the items:

"Road building machinery ............................$12,500.00
Supervision and engineering ..................... 3,000.00
Maintenance .................................................. 3,500.00
To be turned over to county court to be
    used on roads not cared for in this
    budget .................................................. 17,800.00."

there is an entire lack of description of any road. Only surmise and conjecture afford any indication as to whether any permanent road will be built or maintained by reason thereof; and if so, we are equally unadvised as to whether all or only a part of these items. will be so applied, and if only a part, the amount thereof is nowhere specified.

In *Elliott v. Tillamook County,* 86 Or. 427, 168 P. 77, this court gave consideration to the statutory provision under discussion (Section 44-2011 Oregon Code 1930,

section 11 General Laws of Oregon, 1913, ch. 103, p. 170). We quote from the opinion in that case:

"While a statute may change the *onus probandi* and declare that certain facts afford *prima facie* evidence of other related facts, the legislature under such circumstances as are here detailed is powerless to make the resulting fact conclusive evidence of the preceding fact, upon which it is necessarily predicated."

*Roesch v. Henry,* 54 Or. 230, 103 P. 439, cited by defendants, in so far as it questions the sufficiency of the notices of election, deals with the failure of the clerk to place his signature and the seal of the court upon such notices. It was held that there is no statutory provision requiring a written signature or the seal of the court to be affixed to such notices.

*State v. Billups,* 63 Or. 277, 127 P. 686, 48 L. R. A. (N. S.) 308, is a criminal case in which an attack was made upon the sufficiency of the order calling an election upon the question of prohibiting the sale of intoxicating liquor. The attack in that case is collateral, while in the instant case it is direct. Upon collateral attack greater liberality is observed in favor of the record attacked than in cases of direct attack.

*Arkansas County v. Coleman-Fulton Pasture Co.,* 108 Tex. 216, 191 S. W. 553, also cited by defendants, holds that where bonds have been voted by a county for the construction of a road in accordance with a constitutional provision, the road so authorized included bridges as a part thereof. There it clearly appeared that the causeway or bridge was part of a paved road and the constitution expressly authorized the construction of paved roads. We find this rule declared in *Stoppenback v. Multnomah County,* 71 Or. 493, 142 P. 832.

In the case at bar, it does not appear that the road building machinery or that the maintenance of $3,500 was that of any permanent road or that the proposed use of the $17,800 would be for building or maintaining any permanent road.

*Bateman v. Colgan,* 111 Cal. 580, 44 P. 238, also cited by defendants, is a case instituted to require the state comptroller to draw his warrant against the San Francisco depot fund in the state treasury in payment of a demand in favor of petitioners arising under a contract awarded them by the board of state harbor commissioners for furnishing certain work and material in the construction of a railroad ferry and passenger depot. If the instant case were one wherein a claim against defendant county had been made for road machinery necessarily purchased for use upon and actually used in building or maintaining a permanent road duly authorized to be built or maintained, and we were called upon to decide whether such a claim should be upheld, doubtless we would hold as the California court held in *Bateman v. Colgan,* supra, that the authority to make such improvements implies the power to employ all necessary means therefor. The instant case presents the question whether submitting the proposition that $12,500 in bonds should be issued to buy road building machinery is synonymous with submitting the proposition that such bonds should be issued to build or maintain permanent roads. Especially when it is proposed to maintain other roads than those described by expending $17,800 thereon.

■ We have not discussed the phase of the case dealing with the alleged insufficient number of posted election notices, because we think that the complaint does not allege any failure to post such notices. It merely alleges that the proofs submitted fail to show

that the prescribed number of notices was posted. Tested by a demurrer, this allegation is fatally deficient. We are not unmindful, however, of the numerous authorities which hold that failure to post or publish such notices strictly as prescribed by statute is merely an irregularity which will not invalidate an election unless supported by an affirmative showing that a different result would have ensued if the statute had been strictly observed.

For the reasons above given, the decree of the circuit court is affirmed.

It is further ordered that neither party shall recover costs or disbursements herein.